**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| One William Street Capital Master Fund Ltd., OWS ABS Master Fund, Ltd., OWS ABS IV, L.P., OWS ABS IV Sub I, LLC, OWS Credit Opportunity I, LLC, OWS Credit Opportunity Sub I, Ltd., 1WS Credit Income Fund, 1WSCI Sub I, LLC, Clear Haven Investments LLC, Clear Haven Investment Fund LP, Clear Haven Total Return Partners LP, Clear Haven Ultra Short Investment Grade Bond Fund LP, Superior Risk Solutions (SAC) Ltd, Clear Haven UMF Fund LP, California Insurance Company, Catlin Insurance Company, Constitution Insurance Company, Florida Casualty Insurance Company, Texas Insurance Company, EF Securities LLC, Crescent II Fund, L.P., Ellington Private Opportunities Main Master Fund III LP, Ellington M Credit Master Fund Ltd., Ellington Special Relative Value Fund LLC, and Sagicor Life Insurance Company,<br><br>Plaintiffs,<br><br>-against-<br><br>Wilmington Trust, National Association and Vervent Inc.,<br><br>Defendants. | Case No. 1:26-cv-01123 |

**DEFENDANTS' NOTICE OF REMOVAL**

**TO THE CLERK OF THE COURT:**

**PLEASE TAKE NOTICE** that Defendants Wilmington Trust, National Association ("Wilmington Trust") and Vervent, Inc. ("Vervent"), by and through their respective undersigned counsel, file this Notice of Removal pursuant to 28 U.S.C. § 1452 removing the action commenced against Wilmington Trust and Vervent (collectively, the "Defendants") by the above-captioned plaintiffs (the "Plaintiffs" or "Minority Noteholder Group") from the Supreme

Court of the State of New York, County of New York (the "New York State Court"), to the United States District Court for the Southern District of New York (this "Court"). This Court has original jurisdiction over this action (this "Action") pursuant to 28 U.S.C. § 1334(b).

In support of this Notice of Removal, Defendants state as follows:

## INTRODUCTION

1. This Action arises from the jointly administered bankruptcy cases of Tricolor Holdings, LLC and certain of its affiliates (collectively, the "Tricolor Debtors"), which are pending before the Honorable Michelle V. Larson in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court"), captioned *In re Tricolor Holdings, LLC, et al.*, Case No. 25-33487 (MVL) (collectively, the "Bankruptcy Cases"). As the Minority Noteholder Group's complaint admits, the Bankruptcy Cases result from the "catastrophic collapse" of the Tricolor Debtors, "a subprime auto lender that engaged in a massive, years-long fraud." *See, e.g.*, Declaration of Ross E. Firsenbaum, dated February 10, 2026, filed contemporaneously herewith (the "Firsenbaum Declaration"), Ex. 1, Complaint, [Docket No. 2], *One William St. Cap. Master Fund Ltd., et al. v. Wilmington Tr., Nat'l Ass'n, et al.*, Index No. 650228/2026 (the "Complaint" or "Compl."), ¶ 1.

2. The Tricolor Debtors commenced the Bankruptcy Cases on September 10, 2025 (the "Petition Date"). On the same date, the Office of the United States Trustee for Region 6 appointed Anne Elizabeth Burns as the chapter 7 trustee in the Bankruptcy Cases (the "Chapter 7 Trustee"). Since her appointment, the Chapter 7 Trustee has been actively investigating the alleged fraud perpetrated by the Tricolor Debtors (including the alleged pledging of non-existent collateral or pledging of identical collateral to multiple lenders), while seeking to monetize Tricolor Debtor and non-debtor assets, and pursuing claims against others to recover assets to distribute to creditors through the bankruptcy process. *See, e.g.*, Firsenbaum Decl., Ex. 2,

Complaint, p. 4 [Docket No. 1], *Burns v. Chu, et al.*, Adv. Proc. No. 25-03126 (MVL) (Bankr. N.D. Tex. Dec. 19, 2025); Firsenbaum Decl., Ex. 3, Chapter 7 Trustee's Amended Emergency Motion to (I) Sell Estate Assets Free and Clear of all Liens, Claims, Encumbrances, and Interests, (II) Establish Sale Procedures, and (III) Granting Related Relief [Docket No. 537], *In re Tricolor Holdings, LLC, et al.,* Case No. 25-33487 (MVL) (Bankr. N.D. Tex. Dec. 15, 2025).

3. The Minority Noteholder Group is an active participant in the Bankruptcy Cases. In addition to participating in hearings and negotiating forms of orders with the Chapter 7 Trustee and other parties in interest, the Minority Noteholder Group invoked the Bankruptcy Court's jurisdiction to pursue discovery from certain Tricolor lenders pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure based on many of the same events and documents referenced in the Complaint in this Action.[1] Moreover, the Minority Noteholder Group all but concedes in a footnote in its Complaint that it is actively investigating claims against lenders, underwriters, and potentially others arising out of the Tricolor Debtors' alleged fraud. *See* Compl., ¶ 12, n.2 ("For the avoidance of doubt, Plaintiffs reserve all rights against all other responsible parties, and nothing in this complaint should be taken to diminish their responsibility.").

4. Nevertheless, in a transparent attempt to avoid the Bankruptcy Court and litigate in a forum less familiar with the ongoing Bankruptcy Cases and issues raised in the Action, on January 12, 2026, the Minority Noteholder Group commenced this Action by filing a summons and the Complaint in the New York State Court.

---

[1] The Minority Noteholder Group later withdrew that motion without explanation. *See* Firsenbaum Decl., Ex. 4, Notice of Withdrawal of the Motion of the Ad Hoc Activist Recovery Group of Noteholders of Tricolor Auto Securitization Trusts for Entry of an Order Authorizing the Examination of Rule 2004 Parties Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure [Docket No. 657], *In re Tricolor Holdings, LLC, et al.*, Case No. 25-33487 (MVL) (Bankr. N.D. Tex. Jan. 13, 2026).

5. As discussed more fully herein, this Action is deeply interconnected with the Bankruptcy Cases. The Minority Noteholder Group's purported claims are predicated on alleged losses that they purport to have suffered due to the "systemic fraud on a massive scale," Compl., ¶ 61, allegedly perpetrated by the Tricolor Debtors—the very fraud that the Chapter 7 Trustee is actively investigating and about which the Bankruptcy Court has already held a myriad of hearings over the past five months and will be holding hearings on motions and in adversary proceedings for the foreseeable future.

6. A copy of the Summons and Complaint is attached to the Firsenbaum Declaration as Exhibit 1. A copy of the Request for Assignment to the Commercial Division and Addendum – Commercial Division (840C) is attached as Exhibit 5 to the Firsenbaum Declaration. Copies of the Affidavits of Service on Defendants Wilmington Trust and Vervent are attached as Exhibit 6 to the Firsenbaum Declaration. Pursuant to 28 U.S.C. § 1446(a), each of the Defendants represents that it has received no other process, pleadings, motions, or orders in this Action other than as described in this paragraph.

7. Defendants intend to move to dismiss all claims against them in this Action at the appropriate time and in the appropriate forum. But, at bottom, for the reasons discussed below, this dispute should proceed in federal court in light of its clear relation to, and potential impact upon, the Tricolor Debtors' bankruptcy estates and the Bankruptcy Cases.

8. Federal jurisdiction is proper here pursuant to 28 U.S.C. § 1334(b) because this Action is "related to" the Bankruptcy Cases and the outcome of this Action will affect (and, at minimum, has a conceivable effect on) the Bankruptcy Cases and the Tricolor Debtors' bankruptcy estates. *See, e.g.*, *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 340 (2d Cir. 2018) ("An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options,

or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.") (quoting *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n.6 (1995)).

## THE COMPLAINT AND BACKGROUND

9. The Complaint purports to assert four causes of action against Wilmington Trust, for breach of contract and breach of fiduciary duty, and a single claim against Vervent for breach of contract. *See* Compl., ¶¶ 84–119. As the Minority Noteholder Group acknowledges in the Complaint, all of its purported claims arise directly from the "massive, years-long fraud" perpetrated by the Tricolor Debtors that is the subject of the Bankruptcy Cases. *Id.* ¶ 1.

### I. Relevant Events Prior to Tricolor's Bankruptcy Filing

10. The Complaint alleges that Tricolor (as defined in the Complaint) was a used car retailer and subprime auto lender. *See* Compl., ¶ 2. Tricolor loaned money to customers purchasing cars at its dealerships. *Id.* Tricolor often would fund these loans through lines of credit provided by warehouse lenders and pledge the auto loan receivables to the warehouse lenders. *Id.* Tricolor would then securitize the loans it originated by selling those loans to the Tricolor Trusts (as defined in the Complaint), which purchased the loans with cash generated by the sale of asset-backed notes to third-party investors, including the members of the Minority Noteholder Group. *Id.* Prior to the Bankruptcy Cases, Debtor Tricolor Auto Acceptance, LLC acted as servicer for the Tricolor Trusts, collecting payments from borrowers, managing delinquencies, and directing vehicle repossessions when customers defaulted. *Id.* ¶ 56.

11. Prior to the Bankruptcy Cases, Vervent was engaged as the backup servicer for the Tricolor Trusts and certain other Tricolor financing facilities. *Id.* ¶ 57. Wilmington Trust was custodian and indenture trustee for the Notes issued by the Tricolor Trusts, as well as custodian for certain non-debtor warehouse lending facilities. *Id.* ¶¶ 43, 59. Debtor Tricolor

Auto Acceptance, LLC was terminated as servicer for certain of Tricolor's "warehouse" facilities shortly before the September 10, 2025 commencement of the Bankruptcy Cases, and Vervent was appointed successor servicer for those facilities. *See* Firsenbaum Decl., Ex. 7, Objection of the Ad Hoc Activist Recovery Group of Noteholders of Tricolor Auto Securitization Trusts to Vervent's Motion to Establish Interim Procedures for Invoicing, Payment, and Reconciliation of Servicer Fees as to Contested and Clean Accounts, p. 2 n.3 [Docket No. 704], *In re Tricolor Holdings, LLC, et al.,* Case No. 25-33487 (MVL) (Bankr. N.D. Tex. Jan. 28, 2026).

**II. The Bankruptcy Court's Authorization and Oversight of Vervent as Servicer of Tricolor's Debt Facilities**

12. On September 10, 2025, the Tricolor Debtors commenced the Bankruptcy Cases and the Chapter 7 Trustee was appointed. On the same date, Vervent became successor servicer for the Tricolor Trusts. Immediately following her appointment, the Chapter 7 Trustee filed an emergency motion in the Bankruptcy Court seeking authorization for Vervent to continue to act as servicer for, among others, the Tricolor Trusts pursuant to the Sale and Servicing Agreements (as defined in the Complaint). Firsenbaum Decl., Ex. 8, Emergency Motion for Entry of Order Approving Stipulation Between Chapter 7 Trustee and Vervent, Inc., ¶ 11 [Docket No. 53], *In re Tricolor Holdings, LLC, et al.,* Case No. 25-33487 (MVL) (Bankr. N.D. Tex. Sept. 17, 2025).[2] The Bankruptcy Court granted that motion on September 19, 2025. Firsenbaum Decl., Ex. 9, Order Granting Chapter 7 Trustee's Motion for Entry of Order Approving Stipulation Between Trustee and Vervent Inc. [Docket No. 79], *In re Tricolor Holdings, LLC, et al.,* Case No. 25-

[2] "Vervent's ability to continue servicing the applicable loans and to otherwise provide the servicer duties under the Servicing Agreements during these cases is essential to protecting the interests of all parties and the estates, including the lenders and consumer borrowers, as well as in allowing the [Chapter 7] Trustee to perform her statutory duties, including to secure property of the estates and to administer assets and claims."

33487 (MVL) (Bankr. N.D. Tex. Sept. 19, 2025) (collectively, with the additional orders set forth in Paragraph 13, the "Vervent Servicing Orders").

13. Since then, the Bankruptcy Court has entered numerous orders authorizing Vervent to continue performing servicing and other tasks for the estates and the Tricolor Trusts, as well as certain other Tricolor facilities, under its supervision, and providing related relief so Vervent can continue performing those critical servicer functions within the confines of the Bankruptcy Cases and the Bankruptcy Code (including modification of the automatic stay). *See, e.g.*, Firsenbaum Decl., Ex. 10, Amended Order Granting Chapter 7 Trustee's Motion for Entry of Order Approving Stipulation Between Trustee and Vervent Inc. [Docket No. 196], *In re Tricolor Holdings, LLC, et al.*, Case No. 25-33487 (MVL) (Bankr. N.D. Tex. Oct. 15, 2025); Firsenbaum Decl., Ex. 11, Second Amended Order Granting Chapter 7 Trustee's Motion for Entry of Order Approving Stipulation Between Trustee and Vervent Inc. [Docket No. 287], *In re Tricolor Holdings, LLC, et al.*, Case No. 25-33487 (MVL) (Bankr. N.D. Tex. Oct. 29, 2025); Firsenbaum Decl., Ex. 12, Third Amended Order Granting Chapter 7 Trustee's Motion for Entry of Order Approving Stipulation Between Trustee and Vervent Inc. [Docket No. 435], *In re Tricolor Holdings, LLC, et al.*, Case No. 25-33487 (MVL) (Bankr. N.D. Tex. Nov. 21, 2025); Firsenbaum Decl., Ex. 13, Fourth Amended Order Granting Chapter 7 Trustee's Motion for Entry of Order Approving Stipulation Between Trustee and Vervent Inc. [Docket No. 520], *In re Tricolor Holdings, LLC, et al.*, Case No. 25-33487 (MVL) (Bankr. N.D. Tex. Dec. 9, 2025); Firsenbaum Decl., Ex. 14, Fifth Amended Order Granting Chapter 7 Trustee's Motion for Entry of Order Approving Stipulation Between Trustee and Vervent Inc. [Docket No. 590], *In re Tricolor Holdings, LLC, et al.*, Case No. 25-33487 (MVL) (Bankr. N.D. Tex. Dec. 30, 2025); Firsenbaum Decl., Ex. 15, Sixth Amended Order Granting Chapter 7 Trustee's Motion for Entry

of Order Approving Stipulation Between Trustee and Vervent Inc. [Docket No. 668], *In re Tricolor Holdings, LLC, et al.*, Case No. 25-33487 (MVL) (Bankr. N.D. Tex. Jan. 15, 2026).

14. Initially in the Bankruptcy Cases, the Chapter 7 Trustee, with the assistance of Vervent and pursuant to the Vervent Servicing Orders, focused on, among other things, ensuring that the assets in the Tricolor Debtors' estates or possession were accounted for and otherwise secured. Vervent actively worked with third parties to transport the vehicles from the Tricolor Debtors' various vehicle locations to be stored at auction house lots pending the sale of such vehicles. Although not a "normal" servicer duty, Vervent coordinated this transportation and security effort to assist the Chapter 7 Trustee and benefit stakeholders in the Bankruptcy Cases, including to facilitate the Bankruptcy Court-approved sale process of the approximately 10,000 vehicles that were on various Tricolor Debtor-lots or other facilities as of the Petition Date. Moreover, in assisting the Chapter 7 Trustee and others, and under the Vervent Servicing Orders, Vervent incurred significant non-ordinary expenses to stabilize and facilitate the transfer of loan servicing post-petition, including: securing, preserving, and transitioning Tricolor's IT infrastructure to Vervent's systems; obtaining access to GPS monitoring and related data for vehicle collateral; obtaining access to vehicle title and registration records; paying critical third-party vendors of the Tricolor Debtors; and hiring independent contractors with familiarity with the Tricolor Debtors' operations and assets to assist Vervent and the Chapter 7 Trustee in these transition efforts.

15. Through those transition efforts, and under the authorization provided in the Vervent Servicing Orders and pursuant to its various servicing contracts, Vervent is now servicing substantially all of the loans in the Tricolor portfolio, including certain "unassigned notes" that ultimately may be property of the Tricolor Debtors' bankruptcy estates. In its

capacity as loan servicer, and again in accordance with the terms and conditions in the Vervent Servicing Orders, Vervent manages and services the loans and receives into a single client trust account funds remitted by borrowers with respect to various pools of receivables. Those collected funds, moreover, have remained held in that trust account except for very limited disbursements explicitly authorized by the Bankruptcy Court (such as certain insurance and sales tax payments). As a result, Vervent has played a central role in the Bankruptcy Cases by facilitating the efforts of the Chapter 7 Trustee and other parties in interest to maximize value by securing estate and non-estate assets, restarting "normal" loan servicing, and, more broadly, by aiding the Chapter 7 Trustee and other stakeholders in their efforts to untangle the web of collateralized obligations left behind by the collapse of Tricolor's business. That process by the Chapter 7 Trustee and other stakeholders to determine the ultimate ownership and collateral mapping among the various Tricolor secured debt facilities remains ongoing at this time (including certain loans that may or may not be property of the bankruptcy estates once a final determination is made), including the Tricolor Trusts. *See, e.g.*, Firsenbaum Decl., Ex. 16, Vervent, Inc.'s Omnibus Objection to Consumer Stay Relief Motions and Reservation of Rights, pp. 3–4 [Docket No. 697], *In re Tricolor Holdings, LLC, et al.*, Case No. 25-33487 (MVL) (Bankr. N.D. Tex. Jan. 26, 2026).

## III. The Minority Noteholder Group's Active Participation in the Bankruptcy Cases and Submission to Bankruptcy Court Jurisdiction with Respect to Identification of Tricolor Trust Collateral

16. The Minority Noteholder Group has been, since day one of the Bankruptcy Cases, a vocal and active participant in the Bankruptcy Cases, including as "Secured Parties" identified

by the Chapter 7 Trustee.[3] Indeed, by and through its counsel, the Minority Noteholder Group has regularly participated in hearings in the Bankruptcy Cases, including the September 18, 2025 hearing to consider the Chapter 7 Trustee's emergency motion authorizing Vervent's performance as servicer with respect to the Tricolor Trusts and certain other Tricolor financing facilities, the hearing to approve the Chapter 7 Trustee's sales procedures, and the most recent hearing held in the Bankruptcy Cases on February 2, 2026.[4]

17. During the September 18, 2025 hearing, the Minority Noteholder Group's counsel cross-examined Vervent's chief legal officer in connection with the Chapter 7 Trustee's request to authorize Vervent to continue to perform various servicer functions. Firsenbaum Decl., Ex. 18, Transcript of Hearing held on September 18, 2025, pp. 67:14–70:5 [Docket No. 81], *In re Tricolor Holdings, LLC, et al.*, Case No. 25-33487 (MVL) (Bankr. N.D. Tex. Sept. 20, 2025). At that hearing, the Minority Noteholder Group's counsel represented to the Bankruptcy Court that the Minority Noteholder Group did not object to the relief requested (*i.e.*, Vervent's

---

[3] *See, e.g.,* Firsenbaum Decl., Ex. 17, Order Granting Chapter 7 Trustee's Amended Emergency Motion to (I) Sell Estate Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (II) Establish Sale Procedures, and (III) Granting Related Relief, p. 3, n.4 [Docket No. 593], *In re Tricolor Holdings, LLC, et al.*, Case No. 25-33487 (MVL) (Bankr. N.D. Tex. Dec. 30, 2025):

> ***The term "Secured Parties" means*** (i) Wilmington Trust, N.A. or any successor indenture trustee under any series of asset backed notes issued by a subsidiary of Tricolor Holdings, LLC (each, a "Securitization" and collectively, the "Securitizations"), (ii) the ad hoc group of holders of asset-backed notes issued pursuant to any Securitization by certain subsidiaries of Tricolor Holdings, LLC represented by Davis Polk & Wardwell LLP, ***(iii) the ad hoc activist recovery group of holders of asset-backed notes issued pursuant to any Securitization by certain subsidiaries of Tricolor Holdings, LLC represented by Quinn Emanuel Urquhart & Sullivan LLP***, (iv) JPMorgan Chase Bank, N.A. or any successor agent, (v) Fifth Third Bank, N.A. or any successor agent; (vi) TBK Bank, SSB; (vii) ACV Capital LLC; (viii) Manheim Remarketing, Inc., and (ix) Origin Bank.

(emphasis added).

[4] *See, e.g.*, Firsenbaum Decl., Ex. 18, Transcript of Hearing held on September 18, 2025 [Docket No. 81], *In re Tricolor Holdings, LLC, et al.*, Case No. 25-33487 (MVL) (Bankr. N.D. Tex. Sept. 20, 2025); Firsenbaum Decl., Ex. 19, Transcript of Hearing held on December 18, 2025 [Docket No. 580], *In re Tricolor Holdings, LLC, et al.*, Case No. 25-33487 (MVL) (Bankr. N.D. Tex. Dec. 23, 2025); Firsenbaum Decl., Ex. 20, Transcript of Hearing held on February 2, 2026 [Docket No. 757], *In re Tricolor Holdings, LLC, et al.,* Case No. 25-33487 (MVL) (Bankr. N.D. Tex. Feb. 6, 2026).

performance as servicer) and noted that the Chapter 7 Trustee had incorporated the Minority Noteholder Group's comments into the proposed order, which the Bankruptcy Court entered. *Id.* at 76:18–77:19; Firsenbaum Decl., Ex. 9, Order Granting Chapter 7 Trustee's Motion for Entry of Order Approving Stipulation Between Trustee and Vervent Inc. [Docket No. 79], *In re Tricolor Holdings, LLC, et al.*, Case No. 25-33487 (MVL) (Bankr. N.D. Tex. Sept. 19, 2025).

18. As part of its active participation in the Bankruptcy Cases, the Minority Noteholder Group also submitted to the jurisdiction of the Bankruptcy Court with respect to the determination of whether proceeds of the Chapter 7 Trustee's ongoing asset sale process of approximately 10,000 vehicles located on various Tricolor Debtor and other lots constitute property of the Tricolor Debtors' bankruptcy estates or property of non-debtors, such as the Tricolor Trusts. Specifically, the Minority Noteholder Group is an "Asserted Lien or Interest Party"[5] under the Bankruptcy Court's order approving the Chapter 7 Trustee's proposed asset sales procedures and under the order (which is a "core" order under 28 U.S.C. § 157):

> The Trustee and ***the other Asserted Lien and Interest Parties agree***:
>
> 1. that any lien, ownership, and/or priority disputes relating to the Vehicles or Net Sale Proceeds, or any other disputes in connection with the allocation of the Net Sale Proceeds as between Estate Vehicles and Non-Estate Vehicles, will be subject to and governed by motion practice in accordance with Bankruptcy Rule 9014 and related procedures and no party shall have or assert a defense on the grounds that a party failed to file an adversary proceeding to determine the estate's ownership interest in property; provided, however

[5] *See* Firsenbaum Decl., Ex. 17, Order Granting Chapter 7 Trustee's Amended Emergency Motion to (I) Sell Estate Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (II) Establish Sale Procedures, and (III) Granting Related Relief, p. 5 [Docket No. 593], *In re Tricolor Holdings, LLC, et al.*, Case No. 25-33487 (MVL) (Bankr. N.D. Tex. Dec. 30, 2025):

> By no later than August 31, 2026 (the "Proceeds Bar Date"), or such later date that the Trustee and all Secured Parties agree, all parties, including the Trustee on behalf of the Debtors' estates and the Secured Parties (the "Asserted Lien or Interest Parties"), must assert any purported ownership interest or security interests in and liens upon the Net Sale Proceeds.

> that to the extent that Net Sale Proceeds are determined to be the proceeds of Non-Estate Vehicles, any disputes with respect to such Net Sale Proceeds shall be determined pursuant to applicable law; and
>
> 2. ***to submit to the jurisdiction of the Court and consent to the entry of an order by the Court in connection with the sale process as to the determination of whether Net Sale Proceeds constitute proceeds of Estate Vehicles or Non-Estate Vehicles***.

Firsenbaum Decl., Ex. 17, Order Granting Chapter 7 Trustee's Amended Emergency Motion to (I) Sell Estate Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (II) Establish Sale Procedures, and (III) Granting Related Relief, p. 12 [Docket No. 593], *In re Tricolor Holdings, LLC, et al.*, Case No. 25-33487 (MVL) (Bankr. N.D. Tex. Dec. 30, 2025) (emphasis added). The sales process is set to be completed by no later than April 30, 2026, and parties in interest, including the Minority Noteholder Group, will be afforded a Bankruptcy Court approved and supervised process for asserting claims against the proceeds of such sales by no later than August 31, 2026. *See* Firsenbaum Decl., Ex. 17, Order Granting Chapter 7 Trustee's Amended Emergency Motion to (I) Sell Estate Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (II) Establish Sale Procedures, and (III) Granting Related Relief, p. 5 [Docket No. 593], *In re Tricolor Holdings, LLC, et al.*, Case No. 25-33487 (MVL) (Bankr. N.D. Tex. Dec. 30, 2025). Vervent, moreover, is an integral part of the vehicle sale procedures approved by the Bankruptcy Court, and Vervent is entitled to certain compensation under the procedures for those efforts. *See, e.g.*, *id.* at p. 3 ("The Trustee will work cooperatively with Vervent and Holman to ensure that the sale of substantially all the Vehicles occurs no later than April 30, 2026."); p. 5 ("In consideration for the services to be rendered by Vervent and Holman, both parties will be entitled to a combined administrative and remarketing fee…").

19. As further evidence of their active involvement in the Bankruptcy Cases, the Minority Noteholder Group also sought discovery under Bankruptcy Rule 2004 in the Bankruptcy Court, invoking the Bankruptcy Court's jurisdiction on certain issues identical to those raised in this Action. *See* Firsenbaum Decl., Ex. 21, Motion of the Ad Hoc Activist Recovery Group of Noteholders of Tricolor Auto Securitization Trusts for Entry of an Order Authorizing the Examination of Rule 2004 Parties Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure [Docket No. 505], *In re Tricolor Holdings, LLC, et al.*, Case No. 25-33487 (MVL) (Bankr. N.D. Tex. Dec. 2, 2025). Specifically, the Minority Noteholder Group's Rule 2004 motion:

a. States that its Rule 2004 examination was meant to "determine the nature and extent of Non-Debtor entity involvement" in Tricolor's collapse, "including the Event of Default" under the Tricolor Trust documents that forms the basis of certain of the Minority Noteholder Group's claims against Defendants. *Compare id.* at 3 *with* Compl., ¶¶ 107, 116–118.

b. Refers to the same correspondence as a basis for its purported right to Rule 2004 discovery that it references in the Complaint and exhibits thereto as a basis for its claims. *Compare* Firsenbaum Decl., Ex. 21, Motion of the Ad Hoc Activist Recovery Group of Noteholders of Tricolor Auto Securitization Trusts for Entry of an Order Authorizing the Examination of Rule 2004 Parties Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure, pp. 6–8 [Docket No. 505], *In re Tricolor Holdings, LLC, et al.*, Case No. 25-33487 (MVL) (Bankr. N.D. Tex. Dec. 2, 2025) *with* Compl., ¶ 66 & Ex. 5 at 1.

c. Admits that it seeks discovery "to determine, among other things, whether conduct that was purportedly undertaken by or on behalf of the Debtor, non-Debtor warehouse lenders, and non-Debtor facilitators of the securitizations gives rise to claims for common law fraud, securities fraud, negligent misrepresentation, fraudulent transfer, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, breach of contract, tortious interference with contract, or other causes of action," that its "potential claims would affect the order of priority among creditors to the bankruptcy," and that its requested "discovery will also clarify the extent of commingling of

non-Debtor assets with Debtor assets, as well as whether any non-Debtor warehouse lenders or facilitators of the securitizations improperly seized assets belonging to the Estate or the Holders." Firsenbaum Decl., Ex. 21, Motion of the Ad Hoc Activist Recovery Group of Noteholders of Tricolor Auto Securitization Trusts for Entry of an Order Authorizing the Examination of Rule 2004 Parties Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure, p. 4 [Docket No. 505], *In re Tricolor Holdings, LLC, et al.*, Case No. 25-33487 (MVL) (Bankr. N.D. Tex. Dec. 2, 2025).

d. Admits that its members are parties in interest in the Bankruptcy Cases: "The Holders file this Motion to safeguard securitization investors' rights as parties in interest . . . ." *Id.*

While the Minority Noteholder Group "withdrew" its Rule 2004 motion without explanation a coincidental *one day* after filing the Complaint in this Action, its admissions make clear that the Tricolor Debtors' alleged fraudulent conduct forms the basis of the Minority Noteholder Group's purported claims against Defendants in this Action and that the purported claims in the Complaint are highly interconnected with the ongoing Bankruptcy Cases. *See* Firsenbaum Decl., Ex. 4, Notice of Withdrawal of the Motion of the Ad Hoc Activist Recovery Group of Noteholders of Tricolor Auto Securitization Trusts for Entry of an Order Authorizing the Examination of Rule 2004 Parties Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure [Docket No. 657], *In re Tricolor Holdings, LLC, et al.*, Case No. 25-33487 (MVL) (Bankr. N.D. Tex. Jan. 13, 2026).

20. Most recently, on January 28, 2026, the Minority Noteholder Group objected to Vervent's request that the Bankruptcy Court approve procedures for authorizing minimum payments to Vervent for its services as servicer to the various Tricolor financing facilities, asserting that Vervent should not be paid any servicing fees under the Sale and Servicing Agreements due to Vervent's alleged breach of those agreements. *See* Firsenbaum Decl., Ex. 7, Objection of the Ad Hoc Activist Recovery Group of Noteholders of Tricolor Auto

Securitization Trusts to Vervent's Motion to Establish Interim Procedures for Invoicing, Payment, and Reconciliation of Servicer Fees as to Contested and Clean Accounts, p. 6, n.5 [Docket No. 704], *In re Tricolor Holdings, LLC, et al.*, Case No. 25-33487 (MVL) (Bankr. N.D. Tex. Jan. 28, 2026). Thus, the Minority Noteholder Group has raised before the Bankruptcy Court an identical issue that it is asking the New York State Court to resolve in this Action: whether Vervent breached the Sale and Servicing Agreements. *Compare id.* with Compl., ¶¶ 96–107. The Bankruptcy Court held a hearing on the motion on February 2, 2026, at which the Minority Noteholder Group was the sole objector. *See* Firsenbaum Decl., Ex. 20, Transcript of Hearing held on February 2, 2026 [Docket No. 757], *In re Tricolor Holdings, LLC, et al.*, Case No. 25-33487 (MVL) (Bankr. N.D. Tex. Feb. 6, 2026). During the hearing, the Minority Noteholder Group offered into evidence copies of a Sale and Servicing Agreement and Indenture that are attached to, and the purported basis of, its Complaint in this Action, both of which the Bankruptcy Court accepted into evidence. *See* Firsenbaum Decl., Ex. 22, Admitted Exhibit List [Docket No. 717], *In re Tricolor Holdings, LLC, et al.*, Case No. 25-33487 (MVL) (Bankr. N.D. Tex. Feb. 2, 2026). Following the hearing, the Bankruptcy Court took the matter under advisement and the Minority Noteholder Group's objection remains *sub judice* as of the date hereof.

## IV. The Tricolor Debtors Owe Indemnification Obligations to Wilmington Trust and Vervent Under the Tricolor Trust Documents

21. In this Action, the Minority Noteholder Group seeks damages from Wilmington Trust for its alleged breaches of the Sale and Servicing Agreements and Indentures and from Vervent for its alleged breach of the Sale and Servicing Agreements. Compl., ¶¶ 43, 85–119. Wilmington Trust and Vervent have contractual rights to indemnification from the Tricolor Debtors under the Sale and Servicing Agreements for the claims asserted in the Complaint.

Wilmington Trust also has a contractual right to indemnification under the Indentures for the claims asserted in the Complaint.

22. For example, Section 6.04(a)(iv) of the Sale and Servicing Agreements provides a broad indemnity by Debtor Tricolor Auto Acceptance, LLC, as Servicer, in favor of Wilmington Trust and Vervent for losses, liabilities, and expenses arising out of or incurred in connection with their performance under the Sale and Servicing Agreements:

> ***The Servicer shall indemnify, defend and hold harmless the Trustees, the Custodian, the Backup Servicer*** and their respective officers, directors, employees and agents ***from and against all losses, liabilities, claims, costs, damages and expenses (including reasonable legal fees and expenses and court costs) arising out of or incurred in connection with the acceptance or performance of the trusts and duties herein*** and contained in the Trust Agreement (in the case of the Owner Trustee), contained in the Underlying Trust Agreement (in the case of the Underlying Trustee) ***and contained in the Indenture (in the case of the Indenture Trustee) (including those incurred in connection with any enforcement of any indemnification or other obligation hereunder),*** except to the extent that such loss, liability, claim, cost, damage or expense: (A) shall be due to the willful misfeasance, bad faith or gross negligence (except for errors in judgment) of the related Trustee as determined by a court of competent jurisdiction, and the indemnification provided for in this Section shall be paid until such time as such court enters a judgment as to the extent and effect of the alleged gross negligence, willful misconduct or bad faith, at which time the related Trustee, shall, to the extent required pursuant to such court's determination, promptly return to the Servicer any such indemnification amounts so received but not owed as determined by such court, (B) in the case of the Owner Trustee, shall arise from the breach by it of any of its representations or warranties set forth in Section 7.03 of the Trust Agreement, (C) in the case of the Underlying Trustee, shall arise from the breach by it of any of its representations or warranties set forth in Section 7.03 of the Underlying Trust Agreement or (D) relates to any tax other than to the taxes with respect to which either the Depositor or the Servicer shall be required to indemnify a Trustee.

Compl., Ex. 1 § 6.04(a)(iv) (emphasis added).

23. In addition, Section 6.04(a)(iii) of the Sale and Servicing Agreements requires Debtor Tricolor Auto Acceptance, LLC, in its capacity as Servicer, to indemnify Wilmington Trust and Vervent for "any loss, liability, claim, action suit, damage or expense incurred by reason of [Debtor Tricolor Auto Acceptance, LLC's] willful misfeasance, bad faith or negligence in the performance of [Debtor Tricolor Auto Acceptance, LLC's] duties under the [Sale and Servicing Agreement]." *Id.* § 6.04(a)(iii). These indemnification rights survive the termination of Debtor Tricolor Auto Acceptance, LLC, as Servicer. *Id.* § 6.04(c).

24. Similarly, the Indentures require Debtor Tricolor Auto Acceptance, LLC, in its capacity as Administrator, to indemnify Wilmington Trust for any losses or claims "arising out of or in connection with the acceptance or administration of the transactions contemplated by [the] Indenture." Compl., Ex. 3 § 6.07(a).

**GROUNDS FOR REMOVAL**

25. Under 28 U.S.C. § 1452(a), "[a] party may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." Under 28 U.S.C. § 1334(b), this Court has jurisdiction to hear all civil proceedings that are "related to cases under title 11," which is the Bankruptcy Code, including third-party litigation to which a debtor is not a party. *See, e.g.*, *Celotex*, 514 U.S. at 307 n.5 ("Proceedings 'related to' the bankruptcy include . . . suits between third parties which have an effect on the bankruptcy estate."); *SPV Osus*, 882 F.3d at 342 (finding "related to" jurisdiction with respect to third-party litigation based on potential contribution claim assertable against the debtors and the high degree of interconnectedness between the third-party litigation and the applicable bankruptcy cases); *KeyBank Nat'l Ass'n v. Franklin Advisers, Inc.*, 600 B.R. 214 (S.D.N.Y. 2019) (finding "related to" jurisdiction with respect to third-party litigation based on indemnity claim assertable against

the debtors); *Five Mile Cap. II SPE ESH LLC v. Cerberus Cap. Mgmt. (In re Extended Stay Inc.)*, 435 B.R. 139 (S.D.N.Y. 2010) (same).

26. This Action is indisputably "related to" the Bankruptcy Cases because the action's outcome clearly has, at a minimum, a conceivable effect on the Tricolor Debtors' bankruptcy estates. *See, e.g., SPV Osus*, 882 F.3d at 339–340 (citing *Parmalat Cap. Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 579 (2d Cir. 2011); *Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.)*, 980 F.2d 110, 114 (2d Cir. 1992) ("[t]he test for determining whether litigation has a significant connection with a pending bankruptcy proceeding is whether its outcome might have any 'conceivable effect' on the bankrupt estate").

27. This "conceivable effect" is apparent in at least three separate and independent ways, each of which is discussed in turn below.

28. *First*, the outcome of this Action may impact distributions to, and relative recoveries of, creditors of the Tricolor Debtors' bankruptcy estates because Debtor Tricolor Auto Acceptance, LLC owes indemnification obligations to Wilmington Trust and Vervent, as applicable, under the Sale and Servicing Agreements and Indentures, as described above.

29. If the Minority Noteholder Group were to prevail against Defendants, Wilmington Trust and Vervent would have contractual claims for indemnification against a Tricolor Debtor for losses, liabilities, and expenses arising out of or incurred in connection with their performance under the Sale and Servicing Agreements, as well as for "any loss, liability, claim, action suit, damage or expense incurred by reason of [Debtor Tricolor Auto Acceptance, LLC's] willful misfeasance, bad faith or negligence in the performance of [Debtor Tricolor Auto Acceptance, LLC's] duties under the [Sale and Servicing Agreements]." Compl., Ex. 1 § 6.04(a)(iii)–(iv); *id.* at Ex. 3 § 6.07(a).

30. Each of Defendants' contractual indemnification claims against the Tricolor Debtors would include any money damages arising out of and any costs incurred in connection with this lawsuit, and such claims would increase the overall amount of unsecured claims against the Tricolor Debtors' estates and thereby reduce potential recoveries to all other unsecured creditors of the Tricolor Debtors' bankruptcy estates. This is precisely why courts in this District routinely find that indemnification claims against debtors are a sufficient basis to support removal based on "related to" jurisdiction. *See*, *e.g.*, *KeyBank*, 600 B.R. 214; *Extended Stay Inc.*, 435 B.R. 139; *N.Y.C. Emps.' Ret. Sys. v. Ebbers (In re WorldCom, Inc. Sec. Litig.)*, 293 B.R. 308, 323 (S.D.N.Y. 2003).

31. *Second*, if the Minority Noteholder Group prevails in this Action, Wilmington Trust would have a contribution claim against the Tricolor Debtors with respect to, at minimum, damages arising from the breach of fiduciary duty claim alleged by the Minority Noteholder Group. The Complaint acknowledges that "behind closed doors Tricolor was engaged in systemic fraud on a massive scale" that "culminated in Tricolor's September 2025 bankruptcy filing." Compl., ¶ 61. Thus, in the unlikely event that Wilmington Trust were found liable, it would have a contribution claim against the Tricolor Debtors because the Tricolor Debtors had a substantial role in causing or augmenting the same alleged injury suffered by the Minority Noteholder Group. *See, e.g.*, *Nassau Roofing & Sheet Metal Co. v. Facilities Dev. Corp.*, 71 N.Y.2d 599, 603 (1988) (finding a contribution claim exists where breach of duty by the contributing party had a part in causing or augmenting the injury for which contribution is sought); *LNC Inv., Inc. v. First Fid. Bank, Nat'l Ass'n*, 935 F. Supp. 1333, 1348 (S.D.N.Y. 1996) ("New York law on contribution and indenture trusts permits First Fidelity to seek contribution from Shawmut for an alleged breach of the common-law post-default fiduciary duty.").

32. As with Defendants' indemnification claims against the Tricolor Debtors' bankruptcy estates, Wilmington Trust's contribution claim would increase the overall amount of unsecured claims in the Bankruptcy Cases, thus diluting potential recoveries to other unsecured creditors. And that is why the Second Circuit and courts in this District routinely find that contribution claims against debtors are a sufficient basis to support removal based on "related to" jurisdiction. *See*, *e.g.*, *SPV Osus*, 882 F.3d at 342 (finding that "a contingent contribution claim may serve as the basis for 'related to' jurisdiction as it may have a 'conceivable effect' on the bankruptcy estate"); *Beightol v. UBS Painewebber (In re Glob. Crossing, Ltd. Sec. Litig.)*, 311 B.R. 345, 347 (S.D.N.Y. 2003) (finding "related to" jurisdiction over state law claims where litigation could lead to a contribution claim against the debtor); *WorldCom*, 293 B.R. at 323 (finding "related to" jurisdiction existed because the third-party defendant's contribution claims against the debtors had "the potential to alter the distribution of assets among the estate's creditors").[6]

33. *Third*, "related to" jurisdiction is also established here by the high degree of interconnectedness between the claims asserted in the Complaint and the Bankruptcy Cases. *See, e.g., SPV Osus*, 882 F.3d at 342 (finding "related to" jurisdiction where this is a high degree

[6] As of the date hereof, the Bankruptcy Court has not yet set a bar date for filing proofs of claim against the Tricolor Debtors in the Bankruptcy Cases. *See* Firsenbaum Decl., Ex. 23, Notice of Chapter 7 Bankruptcy Case [Docket No. 222], *In re Tricolor Holdings, LLC, et al.,* Case No. 25-33487 (MVL) (Bankr. N.D. Tex. Oct. 17, 2025). Courts in this District recognize that, for purposes of removal, a defendant need not file a proof of claim against the debtor's estate if the bar date for filing such claims has not passed. *See, e.g.*, *Canosa v. Ziff*, 2018 WL 3642631, at *4 (S.D.N.Y. Aug. 1, 2018) ("[the indemnity] directly implicate[s] the debtors' estate. Sarnoff and Koenigsberg have already filed proofs of claim in the bankruptcy court asserting their right to indemnification," and "[a]lthough the other directors have not yet done so—counsel represented at argument that the deadline to do so has not yet been set—the Court expects that all directors will seek indemnification and/or advancement of legal fees and expenses from the estate."); *Greyhawk Hawthorne Lender, LLC v. Vella*, 2025 WL 1730258, at *13 (S.D.N.Y. June 23, 2025) (holding that "[v]iable indemnification claims against a debtor that could be brought by a non-debtor defendant can be a basis for establishing "related to" jurisdiction, even where such claims have not yet been brought."); *see also SPV Osus*, 882 F.3d at 340 (removing action to federal court based on "related to" jurisdiction where third party defendant failed to file proof of claim against debtor for contribution claims prior to the applicable bar date).

of interconnectedness between the third-party action and the applicable bankruptcy cases); *WorldCom*, 293 B.R. at 321 (finding "related to" jurisdiction existed because "but for WorldCom's bankruptcy, [the debtor] would have been named as a defendant in [this] action, and despite its absence as a party, its conduct will remain at the heart of [this] litigation").

34. The high degree of interconnectedness between this Action and the Bankruptcy Cases is demonstrated by, among other facts, (a) the Complaint's own acknowledgment that the Tricolor Debtors' "massive, years-long fraud" resulted in the "catastrophic collapse" of the Tricolor Debtors' business and the resulting losses to lenders, including holders of the Notes (Compl., ¶ 1), (b) the Chapter 7 Trustee's ongoing sale process for monetizing repossessed vehicles that were in the Tricolor Debtors' possession at the time of the filing of the Tricolor Debtors' bankruptcy petition, (c) the Bankruptcy Court's ongoing oversight of Vervent's actions as servicer, including but not limited to with respect to the Tricolor Trusts, all as described above, and (d) the ongoing and unresolved disputes in the Bankruptcy Cases regarding the ultimate ownership, priority, and allocation of assets across the various Tricolor portfolios, including the determination of whether certain vehicles and unassigned Tricolor notes (and the proceeds thereof) may be property of the bankruptcy estates.

35. The Minority Noteholder Group's purported claims overlap substantially with the Tricolor Debtors' alleged fraud, which is the central issue in the Bankruptcy Cases. The purported claim that Wilmington Trust supposedly failed to uncover the Tricolor Debtors' fraud requires the Minority Noteholder Group to prove that the Tricolor Debtors committed the alleged fraud, *see* Compl., ¶¶ 93–95, is at the heart of the Chapter 7 Trustee's complaint against the Tricolor Debtors' insiders pending before the Bankruptcy Court. *See* Firsenbaum Decl., Ex. 2, Complaint, ¶¶ 8, 145–159 [Docket No. 1], *Burns v. Chu, et al.*, Adv. Proc. No. 25-03126 (MVL)

(Bankr. N.D. Tex. Dec. 19, 2025). Similar to the removed state court actions in *SPV Osus* and *WorldCom*, a finding that Wilmington Trust is liable in this lawsuit for failing to uncover the Tricolor insiders' fraudulent scheme "is entirely dependent on a finding that [the Tricolor Debtors] engaged in wrongful conduct." *See WorldCom*, 293 B.R. at 321; *see also SPV Osus*, 882 F.3d at 342 ("Finally, there is a high degree of interconnectedness between this action and the Madoff bankruptcies: [plaintiff] can only proceed on these claims if it establishes that the Madoff fraud occurred."). Moreover, the alleged conduct of the Tricolor Debtors and the Defendants is "indisputably intertwined" and "the theories of liability pressed by" the Minority Noteholder Group "are necessarily interconnected with these Defendants' rights to contribution" and indemnification, as applicable. *See WorldCom*, 293 B.R. at 321.

36. Similarly, the Minority Noteholder Group's purported claim that it has a right to receive interest payments on certain loans (*see, e.g.*, Counts II & IV of the Complaint) requires the Minority Noteholder Group to prove that it has the exclusive right to receive payment on specific loans that are pledged to secure the Notes. But, according to its own allegations, many of those auto loan receivables are double pledged to other credit facilities or may be fictitious. *See, e.g.,* Compl., ¶ 62. The Chapter 7 Trustee alleges the same thing in its complaint against certain Tricolor Debtor insiders (*see* Firsenbaum Decl., Ex. 2, Complaint, ¶¶ 8, 62 [Docket No. 1], *Burns v. Chu, et al.*, Adv. Proc. No. 25-03126 (MVL) (Bankr. N.D. Tex. Dec. 19, 2025)), and is continuing to investigate which loans are double pledged, who they are double pledged to (*e.g.*, the Tricolor Trusts, other non-debtor facilities, or secured lenders of the Tricolor Debtors), and other potential irregularities in the Tricolor data.

37. In addition to determining issues related to the alleged Tricolor Debtor fraud in connection with the Chapter 7 Trustee's pending lawsuit against Tricolor insiders, the

Bankruptcy Court will also have to make determinations as to the proper allocation of certain collateral as among the Tricolor Debtors and the various Tricolor financing facilities, including the Tricolor Trusts and unassigned notes, in connection with administration of the bankruptcy estates. This is precisely why the Bankruptcy Court's order authorizing the Chapter 7 Trustee's ongoing asset sales process for repossessed vehicles that existed at the time of the Tricolor Debtors' bankruptcy filing provides specific procedures and a timeline through which "Secured Parties" such as the Minority Noteholder Group may assert claims on the proceeds of such asset sales. *See supra* ¶ 18. Indeed, as noted, the Minority Noteholder Group is well aware of these procedures and has already agreed to submit itself to the Bankruptcy Court's jurisdiction with respect to any disputes regarding the proper allocation of the resulting sales proceeds. *See id.* Here, absent removal, the New York State Court will be required to, among other things, determine whether tens of thousands of loans are actually Tricolor Trust collateral (versus, for example, property of the Tricolor Debtors' estates and/or collateral pledged to a non-Tricolor Trust-related financing facility). *See* Compl., ¶ 117 (asserting that there are 40,000 "clean loans" that are Tricolor Trust collateral). As described above, these are the very same issues the Chapter 7 Trustee continues to investigate and that the Bankruptcy Court will need to resolve in connection with any disputes with respect to sale proceeds from the Chapter 7 Trustee's sale process for vehicles.

38. Further, as explained above, this Action asks the trier of fact to resolve issues that the Bankruptcy Court is already actively in the process of resolving, or will necessarily need to resolve, in the course of administering the Bankruptcy Cases. Indeed, the Minority Noteholder Group all but admitted in its recent filing to the Bankruptcy Court that it is asking the Bankruptcy Court to decide the very same issue—whether Vervent has breached the Sale and

Servicing Agreements—as it is asking the New York State Court to decide in this Action. *Compare* Firsenbaum Decl., Ex. 7, Objection of the Ad Hoc Activist Recovery Group of Noteholders of Tricolor Auto Securitization Trusts to Vervent's Motion to Establish Interim Procedures for Invoicing, Payment, and Reconciliation of Servicer Fees as to Contested and Clean Accounts, pp. 2–4 [Docket No. 704], *In re Tricolor Holdings, LLC, et al.,* Case No. 25-33487 (MVL) (Bankr. N.D. Tex. Jan. 28, 2026) *with* Compl., ¶¶ 96–107. The high degree of interconnectedness between the Bankruptcy Cases and this Action is clearly demonstrated by the fact that the Minority Noteholder Group seeks to have the New York State Court adjudicate issues already resolved by, or pending in front of, the Bankruptcy Court.

39. Finally, no matter its ultimate outcome, this litigation may increase the overall amount of administrative expenses born by the Tricolor Debtors' estates. Because of the closely intertwined nature of the Bankruptcy Cases and this Action, in the event this Action proceeds to discovery (which it should not), the parties will focus extensive document and deposition discovery requests on the Tricolor Debtors, the Chapter 7 Trustee, and former officers and directors of the Tricolor Debtors (who in turn may assert indemnification claims against the Tricolor Debtors and/or seek to access proceeds of the Tricolor Debtors' directors and officers liability insurance), among other parties in interest, which would, at minimum, necessarily increase the administrative costs borne by the Tricolor Debtors' bankruptcy estates, further depleting potential estate assets available for distribution to creditors. For example, The Tricolor Debtors' former CEO, Daniel Chu, has already obtained Bankruptcy Court authority to access $5 million under the Tricolor Debtors' directors and officers liability insurance policies for his defense expenses related to (a) his pending criminal charges and (b) the complaint filed by the Chapter 7 Trustee against Chu and other former officers of the Tricolor Debtors. *See*

Firsenbaum Decl., Ex. 24, Daniel Chu's Motion for Order Authorizing the Use of Proceeds of Directors and Officers Liability Insurance Policies for Defense Expenses and Other Loss Amounts [Docket No. 469], *In re Tricolor Holdings, LLC, et al.,* Case No. 25-33487 (MVL) (Bankr. N.D. Tex. Nov. 24, 2025); Firsenbaum Decl., Ex. 25, Transcript of Hearing held on January 12, 2026 [Docket No. 663], *In re Tricolor Holdings, LLC, et al.*, Case No. 25-33487 (MVL) (Bankr. N.D. Tex. Jan. 14, 2026); Firsenbaum Decl., Ex. 26, Transcript of Hearing held on February 4, 2026 [Docket No. 751], *In re Tricolor Holdings, LLC, et al.*, Case No. 25-33487 (MVL) (Bankr. N.D. Tex. Feb 6, 2026). As in *Canosa*, "[t]he scale of this litigation will directly affect the scale of the fees and expenses for which coverage is sought by" Defendants and the "management and course of this litigation therefore has potential meaningfully to affect the bankruptcy estate," which forms an independent basis for removal of this Action. *See Canosa v. Ziff*, 2018 WL 3642631, at *4–5 (S.D.N.Y. Aug. 1, 2018).

40. For all of the foregoing reasons, and potentially more as the Bankruptcy Cases proceed, this Action is "related to" the Bankruptcy Cases, and removal is proper under 28 U.S.C. § 1452.

**TIMELINESS**

41. Defendants have timely filed this Notice of Removal within 30 days of receipt, through service or otherwise, of a copy of the initial pleading in accordance with 28 U.S.C. § 1446(b). Defendants received, through service or otherwise, a copy of the initial pleading no earlier than January 12, 2026.

42. Defendants will promptly serve a copy of this Notice of Removal on counsel for Plaintiffs and file a copy of this Notice of Removal with the Clerk of the New York State Court in accordance with 28 U.S.C. § 1446(d) and Fed. R. Bankr. P. 9027.

**NON-CORE**

43. As required under Fed. R. Bankr. P. 9027(a)(1), Defendants state that the claims asserted against them are non-core, within the meaning of 28 U.S.C. § 157(b), and that they do not consent to the entry of final orders or judgements by a bankruptcy judge.

**NO WAIVER**

44. Nothing in this Notice of Removal should be interpreted as a waiver or relinquishment of Defendants' rights to assert any defenses or objections, whether procedural or substantive, available under state or federal law.

45. If any question arises as to the propriety of the removal of this Action, Defendants request the opportunity to brief any disputed issues and to present further evidence and oral argument in support of their position that this case has been properly removed to this Court.

[*Remainder of page intentionally left blank*]

WHEREFORE, Defendants respectfully request that this Court accept this Notice of Removal and grant them such other and further relief as this Court deems just and proper.

Dated: February 10, 2026

*By:*____________________________
Andrew N. Goldman
Ross E. Firsenbaum
Christopher Bouchoux
**WILMER CUTLER PICKERING HALE AND DORR LLP**
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Telephone: (212) 230-8000
Email:
andrew.goldman@wilmerhale.com
ross.firsenbaum@wilmerhale.com
christopher.bouchoux@wilmerhale.com

*Counsel to Defendant Wilmington Trust, National Association*

*By:*____________________________
R. James DeRose, III
Christopher Fontenelli
Domenic Cervoni
**TROUTMAN PEPPER LOCKE LLP**
875 Third Avenue
New York, New York 10022
Telephone: (212) 704-6288
Email:
rj.derose@troutman.com
christopher.fontenelli@troutman.com
domenic.cervoni@troutman.com

*Counsel to Defendant Vervent, Inc.*

## CERTIFICATE OF SERVICE

I, Andrew N. Goldman, hereby certify that on February 10, 2026, I filed Defendants' Notice of Removal with the Clerk of the Court using the CM/ECF system. Additionally, I hereby certify that on February 10, 2026, I served Defendants' Notice of Removal on counsel of record as listed below by electronic mail and overnight mail pursuant to 28 U.S.C. § 1446(d) and Rule 9027(b) of the Federal Rules of Bankruptcy Procedure.

R. James DeRose, III
Christopher Fontenelli
Domenic Cervoni
**TROUTMAN PEPPER LOCKE LLP**
875 Third Avenue
New York, New York 10022
Telephone: (212) 704-6288
Email: rj.derose@troutman.com
christopher.fontenelli@troutman.com
domenic.cervoni@troutman.com

Blair Adams
Toby Futter
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
295 5th Avenue
New York, New York 10016
Telephone: (212) 849-7000
Email: blairadams@quinnemanuel.com
tobyfutter@quinnemanuel.com

I hereby certify that a copy of Defendants' Notice of Removal will be electronically filed with the Supreme Court of the State of New York, County of New York.

/s/
Andrew N. Goldman