UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ONE WILLIAM STREET CAPITAL MASTER FUND LTD., OWS ABS MASTER FUND, LTD., OWS ABS IV, L.P., OWS ABS IV SUB I, LLC, OWS CREDIT OPPORTUNITY I, LLC, OWS CREDIT OPPORTUNITY SUB I, LTD., 1WS CREDIT INCOME FUND, 1WSCI SUB I, LLC, CLEAR HAVEN INVESTMENTS LLC, CLEAR HAVEN INVESTMENT FUND LP, CLEAR HAVEN TOTAL RETURN PARTNERS LP, CLEAR HAVEN ULTRA SHORT INVESTMENT GRADE BOND FUND LP, SUPERIOR RISK SOLUTIONS (SAC) LTD, CLEAR HAVEN UMF FUND LP, CALIFORNIA INSURANCE COMPANY, CATLIN INSURANCE COMPANY, CONSTITUTION INSURANCE COMPANY, FLORIDA CASUALTY INSURANCE COMPANY, TEXAS INSURANCE COMPANY, EF SECURITIES LLC, CRESCENT II FUND, L.P., ELLINGTON PRIVATE OPPORTUNITIES MAIN MASTER FUND III LP, ELLINGTON M CREDIT MASTER FUND LTD., ELLINGTON SPECIAL RELATIVE VALUE FUND LLC, and SAGICOR LIFE INSURANCE COMPANY, | Case No. 1:26-cv-01123 |

Plaintiffs,

-against-

WILMINGTON TRUST, NATIONAL
ASSOCIATION and VERVENT INC.,

Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO REMAND

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................... II

BACKGROUND ............................................................................................................3

    A.    The Tricolor Securitizations and Plaintiffs' Claims ..................................3

    B.    Defendants' Removal of This Action. .......................................................5

ARGUMENT ................................................................................................................5

I.    THE MANDATORY ABSTENTION DOCTRINE REQUIRES REMAND ...................5

    A.    The Motion Is Timely ................................................................................6

    B.    The Action Is Based Entirely on State Law Claims ..................................6

    C.    The Action Does Not Arise Under Title 11 ...............................................7

    D.    Section 1334 Is the Sole Basis for Federal Jurisdiction ...........................8

    E.    The Action Was Commenced in State Court .............................................9

    F.    The Action Can Be Timely Adjudicated in State Court.............................9

II.    PERMISSIVE ABSTENTION AND EQUITABLE REMAND
    INDEPENDENTLY SUPPORT REMAND ......................................................... 10

    A.    Remand Will Not Impede The Efficient Administration of the Estate ................. 11

    B.    State Law Issues Predominate In This Action ........................................ 13

    C.    There Are No Difficult or Unsettled Issues of State Law ...................... 13

    D.    Judicial Comity Favors Remand............................................................ 14

    E.    This Action Has Limited Relation To The Bankruptcy Case ................. 15

    F.    Plaintiffs Will Suffer Prejudice Absent Remand .................................. 17

    G.    Remand Will Serve Judicial Economy; Removal Does Not................... 17

III.    DEFENDANTS HAVE WAIVED ANY OBJECTION TO REMAND ........................... 18

CONCLUSION............................................................................................................ 21

# TABLE OF AUTHORITIES

**Page**

## Cases

*Allstate Ins. Co. v. Ace Sec. Corp.*,
  2011 WL 3628852 (S.D.N.Y. Aug. 17, 2011) ........................................................ 6, 7, 9, 10, 13

*Arnold v. Garlock, Inc.*,
  278 F.3d 426 (5th Cir. 2001) ..................................................................................... 16

*Bankers Healthcare Grp., LLC v. Goldsol, Inc.*,
  2024 WL 3451037 (N.D.N.Y. July 18, 2024) .................................................. 19, 20

*Bd. of Educ. of Hudson City Sch. Dist. v. Sargent, Webster, Crenshaw & Folley*,
  71 N.Y.2d 21 (1987) ................................................................................................... 16

*Buechner v. Avery*,
  2005 WL 3789110 (S.D.N.Y. July 8, 2005) ................................. 10, 11, 12, 13, 14, 17

*In re Bradlees*,
  2005 WL 106794 (S.D.N.Y. Jan. 19, 2005) ............................................... 5, 7, 9, 15

*Cong. Fin. Corp. v. Bortnick*,
  2000 WL 1634248 (S.D.N.Y. Oct. 31, 2000) ............................................................ 20

*In re Eight-115 Assocs., LLC*,
  626 B.R. 383 (Bankr. S.D.N.Y. 2021) ...................................................................... 9

*In re Extended Stay Inc.*,
  435 B.R. 139 (S.D.N.Y. 2010) ..................................................................... 7, 8, 9, 10

*ICICI Bank Ltd. v. Essar Glob. Fund Ltd.*,
  565 B.R. 241 (S.D.N.Y. 2017) ................................................................................... 12

*John's Insulation, Inc. v. Siska Constr. Co.*,
  671 F. Supp. 289 (S.D.N.Y. 1987) ............................................................................ 19

*Joseph & Kirschenbaum LLP v. Tenenbaum*,
  2020 WL 242374 (S.D.N.Y. Jan. 16, 2020) ............................................................. 6

*JP Morgan Chase Bank, N.A. v. Reijtenbagh*,
  611 F. Supp. 2d 389 (S.D.N.Y. 2009) ....................................................................... 19

*KeyBank Nat'l Ass'n v. Franklin Advisers, Inc.*,
  600 B.R. 214 (S.D.N.Y. 2019) ................................................................................... 5

*Koninklijke Philips Elecs v. Dig. Works, Inc.*,
    358 F. Supp. 2d 328 (S.D.N.Y. 2005) ........................................................................20

*Lancer Ins. Co. v. MKBS, LLC*,
    2008 WL 5411090 (E.D.N.Y. Dec. 22, 2008) ...........................................................19

*LNC Inv., Inc. v. First Fid. Bank, Nat. Ass'n*,
    935 F. Supp. 1333 (S.D.N.Y. 1996) ..........................................................................15

*M/S Bremen v. Zapata Off-Shore Co.*,
    407 U.S. 1 (1972) ......................................................................................................20

*Martinez v. Bloomberg LP*,
    740 F.3d 211 (2d Cir. 2014) ................................................................................20, 21

*Nassau Roofing & Sheet Metal Co. v. Facilities Dev. Corp.*,
    71 N.Y.2d 599 (1988) ...............................................................................................16

*Parmalat Cap. Fin. Ltd. v. Bank of Am. Corp.*,
    639 F.3d 572 (2d Cir. 2011) ........................................................................ 2, 6, 9, 10

*Podems v. Cangemi*,
    2025 WL 934763 (E.D.N.Y. Mar. 3, 2025) ................................................................6

*Rabbi Jacob Joseph Sch. v. Province of Mendoza*,
    342 F. Supp. 2d 124 (E.D.N.Y. 2004) ......................................................................19

*Romano v. Kazacos*,
    609 F.3d 512 (2d Cir. 2010) .......................................................................................7

*Ryan v. Dow Chem. Co.*,
    781 F. Supp. 934 (E.D.N.Y. 1992) .............................................................................9

*SPV Osus Ltd. v. UBS AG*,
    882 F.3d 333 (2d Cir. 2018) .....................................................................................16

*Wexler v. Allegion (UK) Ltd.*,
    2016 WL 6662267 (S.D.N.Y. Nov. 9, 2016) .............................................................20

*In re WorldCom, Inc. Sec. Litig.*,
    293 B.R. 308 (S.D.N.Y. 2003) ...........................................................................16, 18

*Worldview Ent. Holdings Inc. v. Woodrow*,
    611 B.R. 10 (S.D.N.Y. 2019) ...........................................................................7, 8, 14

*Yakin v. Tyler Hill Corp.*,
    566 F.3d 72 (2d Cir. 2009) ........................................................................................19

## Rules / Statutes

28 U.S.C. § 157(b) ................................................................................................................. 5

28 U.S.C. § 157(c)(1)–(2) ..................................................................................................... 18

28 U.S.C. §1334(b) ......................................................................................................... 1, 5, 9

28 U.S.C. § 1334(c)(1) .................................................................................................... 2, 10

28 U.S.C. § 1334(c)(2) ............................................................................................ 1, 2, 5, 6

28 U.S.C. § 1447(c) ............................................................................................................. 21

28 U.S.C. § 1452 ............................................................................................................... 5, 9

28 U.S.C. § 1452(b) ........................................................................................................ 2, 10

28 U.S.C. §1653 .................................................................................................................... 9

Fed. R. Bankr. P. 2004 ....................................................................................................... 17

## PRELIMINARY STATEMENT

This is a New York-law contract and common law fiduciary duty dispute that belongs in state court. On January 12, 2026, Plaintiffs filed this action in the Commercial Division of the Supreme Court of the State of New York, asserting four causes of action against Defendants Wilmington Trust, National Association ("Wilmington") and Vervent Inc. ("Vervent") for breaches of contract and breaches of fiduciary duty relating to seven Tricolor Auto Securitization Trusts (the "Trusts"). Each claim involves the interpretation and enforcement of New York law-governed contracts or arises under state common law. No federal statutory or common law claims are asserted in this action, and the Tricolor Debtors in the Chapter 7 bankruptcy cases pending in the Northern District of Texas are not parties to it.

Defendants removed the action to this Court on the ground that the claims are subject to "related to" bankruptcy jurisdiction under 28 U.S.C. §1334(b) based on the Texas bankruptcy cases. Notice (ECF No. 1) ¶ 43. Defendants' removal is a transparent attempt to wrest this case from the sophisticated Commercial Division, the forum appropriately chosen by Plaintiffs and best equipped to resolve Plaintiffs' New York law claims. This Court should remand for three independent reasons.

*First*, mandatory abstention under 28 U.S.C. § 1334(c)(2) compels remand. Defendants bear the burden of demonstrating that mandatory abstention is unwarranted but cannot carry it, as all six statutory prerequisites are satisfied: (1) this motion is timely; (2) each of Plaintiffs' claims is based exclusively on state law; (3) there is no dispute that the claims do not "arise under" Title 11; (4) Section 1334 is Defendants' sole basis for federal jurisdiction; (5) the action was commenced in state court; and (6) the action can be timely adjudicated in state court. Where these factors are met, the statute requires that the district court abstain, regardless of whether "related to" jurisdiction is present. 28 U.S.C. § 1334(c)(2) (providing that "the district court *shall* abstain")

(emphasis added); *Parmalat Cap. Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 580 (2d Cir. 2011) (providing that "abstention is mandatory" when § 1334(c)(2) factors are met).

*Second,* permissive abstention under 28 U.S.C. § 1334(c)(1) and equitable remand under 28 U.S.C. § 1452(b) independently warrant the return of this action to New York state court. Even if mandatory abstention did not require remand (it does), every relevant factor favors permissive abstention: (1) remanding this action will not impede the efficient administration of the Tricolor estate; (2) state law issues predominate in this action; (3) the New York Commercial Division has deep expertise in complex contract disputes and disputes regarding fiduciary duties, and the applicable state law is well settled, not novel or uncertain; (4) comity requires that this New York law dispute be left to the specialist commercial courts of New York to resolve; (5) this action is remote from the Chapter 7 bankruptcy cases, and will remain so given that Defendants have contractually waived their right to transfer the case to any court in Texas, let alone the Texas bankruptcy court; (6) prejudice would arise if Plaintiffs were denied their chosen state court forum, and (7) judicial economy strongly favors resolution of this action in the court where it was first filed, especially given that Defendants cannot transfer it to Texas.

*Third*, Defendants have independently waived any right to remove this action. Section 11.11 of the Indentures at issue and Section 9.12 of the Sale and Servicing Agreements at issue contain identical forum selection clauses under which Defendants expressly waived "any objection to venue of any action instituted [in New York state or federal court]" and consented to the granting of relief by whichever court Plaintiffs selected.[1] By filing a Notice of Removal, Defendants lodged

---

[1] Examples of the Sale and Servicing Agreement and Indenture, respectively, were attached to the Complaint as Ex. 1 and Ex. 3. ECF No. 1-1.

precisely the type of "objection to venue" that they contractually agreed not to make. Defendants' waiver is clear, unequivocal, and binding, and the Court should hold them to their bargain.

## BACKGROUND

### A.    The Tricolor Securitizations and Plaintiffs' Claims

Between 2022 and 2025, Tricolor Holdings, LLC and its affiliates ("Tricolor") originated subprime auto loans through a network of used car dealerships and securitized those loans by selling them to seven asset-backed Trusts that are at issue here. The Trusts issued over $1.8 billion of asset-backed Notes to investors, including Plaintiffs, who collectively hold Notes with a current outstanding principal balance of approximately $195 million. Compl. (ECF No. 1-1) ¶¶ 38, 58.

Defendant Wilmington served as both Indenture Trustee and Custodian for each Trust. As Custodian, Wilmington was contractually required to verify receipt of original loan documentation—the "Receivables Files"—to ensure that each Trust held unencumbered title to the collateral securing the Notes. Compl. ¶¶ 3, 59. As Indenture Trustee, Wilmington held Trust assets "in trust to secure the payment of principal of and interest on … the Notes, equally and ratably … for the benefit of the Noteholders," and owed heightened fiduciary duties to Noteholders following an Event of Default. Compl. ¶¶ 50–51. Defendant Vervent served as Backup Servicer and, following the commencement of Tricolor's bankruptcy cases, became Successor Servicer. Compl. ¶¶ 6, 57. The Indentures and Sale and Servicing Agreements for each Trust—the documents setting forth Wilmington's and Vervent's responsibilities—are governed by New York law. Compl. ¶ 43.

In September 2025, it came to light that Tricolor had been committing a massive, years-long fraud involving the double-pledging of over $500 million in auto loan receivables and the fabrication of $135 million in entirely fictitious loans, and Tricolor abruptly filed for Chapter 7 liquidation in the Northern District of Texas. Compl. ¶¶ 61–64. Plaintiffs in this action allege that

Wilmington's failure to perform the custodial duties that it owed to Plaintiffs under the Sale and Servicing Agreements—*i.e.*, to verify receipt of the Receivables Files to ensure Tricolor was not double pledging or falsifying the Trust collateral—enabled Tricolor's fraud to proceed undetected to Plaintiffs' detriment. Compl. ¶¶ 4, 65.

Following the commencement of Tricolor's bankruptcy cases, Vervent (as Successor Servicer) and Wilmington (as Indenture Trustee) bore responsibility for ensuring an orderly transition of servicing responsibilities and protecting Noteholder interests. They did neither. Despite contractual mandates requiring them to draw on the Trusts' Reserve Funds to pay interest on the Notes and to distribute collected cash to Noteholders, Wilmington and Vervent refused to do so—even as tens of millions of dollars sat in Trust accounts and millions of dollars were held in Reserve Funds specifically designated for this purpose. Compl. ¶¶ 10, 67–73. This deliberate refusal caused unnecessary interest-payment defaults, triggered acceleration of the Notes in five of the seven Trusts, and permanently cut off interest payments to Plaintiffs' subordinated Notes. Compl. ¶¶ 73, 79–83. Wilmington further breached its obligations by agreeing to pay Vervent excessive and impermissible Transition Costs totaling over $4.8 million—nearly five times the contractual cap—over Plaintiffs' written objection. Compl. ¶¶ 74–78.

Plaintiffs assert four causes of action based on these facts, all arising under New York law: (1) breach of contract against Wilmington as Custodian for failing to verify the Receivables Files; (2) breach of contract against both Defendants for allowing the interest-payment default to occur; (3) breach of contract against Wilmington for paying impermissible Transition Costs to Vervent post-default; and (4) breach of fiduciary duty against Wilmington for its post-default failures. Compl. ¶¶ 84–119.

**B.      Defendants' Removal of This Action.**

On February 10, 2026, Defendants filed a Notice of Removal ("Notice") pursuant to 28 U.S.C. § 1452, invoking "related to" jurisdiction under 28 U.S.C. § 1334(b) on three grounds: (1) Defendants' purported indemnification claims against Debtor Tricolor Auto Acceptance, LLC under the Sale and Servicing Agreements and Indentures; (2) Wilmington's purported contribution claim against the Tricolor Debtors; and (3) the alleged "interconnectedness" between this action and the Tricolor bankruptcy proceedings.  Notice ¶¶ 27–40.

Critically, Defendants concede that the claims asserted against them "are non-core, within the meaning of 28 U.S.C. § 157(b)," and that Defendants "do not consent to the entry of final orders or judgments by a bankruptcy judge."  Notice ¶ 43.  This concession is correct: it confirms that the claims do not "arise under" Title 11 or "arise in" a bankruptcy case—satisfying a principal element of mandatory abstention.

## ARGUMENT

## I.      THE MANDATORY ABSTENTION DOCTRINE REQUIRES REMAND

The doctrine of mandatory abstention requires the court to remand when six factors are met: (1) a timely motion for abstention has been made; (2) the action is based on state law claims; (3) the action does not arise under Title 11; (4) Section 1334 is the sole basis for jurisdiction; (5) the action was commenced in state court; and (6) the action can be timely adjudicated in state court.  *E.g.*, *In re Bradlees*, 2005 WL 106794, at *6 (S.D.N.Y. Jan. 19, 2005).

To be clear, where these factors are satisfied, a court must exercise mandatory abstention irrespective of whether "related to" jurisdiction exists.  *See* 28 U.S.C. § 1334(c)(2); *KeyBank Nat'l Ass'n v. Franklin Advisers, Inc.*, 600 B.R. 214, 225 (S.D.N.Y. 2019) ("If the Court has only 'related to' jurisdiction, then the [c]ase is a 'non-core' proceeding, and the doctrine of mandatory abstention applies").  Accordingly, Defendants' assertion that there is "related to" bankruptcy

jurisdiction here is beside the point.  If the mandatory abstention requirements are met (and they are), "the district court shall abstain from hearing such proceeding."  28 U.S.C. § 1334(c)(2).

The party opposing remand bears the burden of demonstrating that mandatory abstention is not warranted.  *Allstate Ins. Co. v. Ace Sec. Corp.*, 2011 WL 3628852, at *7-*9 (S.D.N.Y. Aug. 17, 2011) ("the Second Circuit has noted that the party opposing remand should bear the burden to demonstrate that the proceeding cannot be timely adjudicated in state court."  The Court therefore held that "Defendants bear the burden of demonstrating that the test for mandatory abstention has not been met") (citing *Parmalat Cap.*, 639 F.3d at 582).  Defendants cannot meet that burden here, as all six factors warranting mandatory abstention are satisfied.

### A.    The Motion Is Timely

Plaintiffs' motion is timely.  Defendants' Notice of Removal was filed on February 10, 2026.  This motion was filed within the thirty-day period recognized by courts in this District.  *See Joseph & Kirschenbaum LLP v. Tenenbaum*, 2020 WL 242374, at *4 (S.D.N.Y. Jan. 16, 2020) (reviewing caselaw) (finding motion timely when filed within 30 days of service of notice).

### B.    The Action Is Based Entirely on State Law Claims

All four of Plaintiffs' causes of action arise exclusively under New York or state common law.  The first three assert breach of the contracts governing the Trusts by Wilmington and Vervent, and the fourth asserts breach of fiduciary duty by Wilmington as Trustee.  The contract claims are expressly governed by New York law as each applicable agreement contains a New York choice of law clause.  Compl. ¶ 43.  Similarly, breach of fiduciary duty is a "quintessential state law claim."  *Podems v. Cangemi*, 2025 WL 934763, at *3 (E.D.N.Y. Mar. 3, 2025).  No federal statutory or common law claims are asserted.

This factor has been decisive in multiple analogous cases in this District.  In *Extended Stay*, Judge Swain held that claims "asserted in state law terms only" and "seek[ing] recovery pursuant

to contracts" did not "frame core 'arising under' or 'arising in' jurisdiction," even though the claims arose in the context of a massive bankruptcy. *In re Extended Stay Inc.*, 435 B.R. 139, 149 (S.D.N.Y. 2010). Similarly, in *Allstate*, the court rejected defendants' argument that state common law claims were really disguised federal claims, emphasizing that "plaintiff is the master of his complaint and is free to avoid federal jurisdiction by pleading only state claims." 2011 WL 3628852, at *7 (quoting *Romano v. Kazacos*, 609 F.3d 512, 518 (2d Cir. 2010)). Likewise, in *Bradlees*, the court found that a dispute grounded in a contractual agreement "necessarily arise[s] under state law." 2005 WL 106794, at *5.

This factor is decisive here, as Plaintiffs' claims are even more clearly grounded in New York state law than in these cases. In *Extended Stay*, for example, defendants argued that plaintiff's state law claims were preempted by the Bankruptcy Code. 435 B.R. at 148–50. Similarly, the *Allstate* defendants argued plaintiffs had disguised federal securities claims as state common law causes of action, 2011 WL 3628852, at *7. No such argument would be colorable here: each of Plaintiffs' claims rests entirely on the interpretation of private New York-law-governed contract principles and principles of state common law fiduciary duties.

### C.    The Action Does Not Arise Under Title 11

Plaintiffs' claims do not arise under the Bankruptcy Code or in a bankruptcy case. They are claims by non-debtor Noteholders against non-debtor counterparties for breach of contractual and fiduciary obligations. The Chapter 7 Tricolor Debtors are not parties to this action, and Defendants themselves concede that "the claims asserted against them are non-core." Notice ¶ 43.

The decision in *Worldview Ent. Holdings Inc. v. Woodrow*, 611 B.R. 10 (S.D.N.Y. 2019), is instructive. The court there ordered mandatory abstention and remand where state law breach of contract and fiduciary duty claims had been removed based on a debtor's Chapter 7 filing on the basis that "federal judges have no special expertise" over claims that "will turn on the meaning

7

of the contracts and course of dealing between the parties and on questions of fiduciary duties under New York law." *Id*. at 19. This action is highly analogous: the claims turn on the interpretation of New York-law-governed contracts and the application of fiduciary duty principles—all quintessential state law questions that do not arise under Title 11.

Defendants' asserted bases for invoking "related to" jurisdiction have no effect on this factor for mandatory abstention. Defendants assert, for example, that if found liable on Plaintiffs' claims, they would have indemnification claims against Tricolor Auto Acceptance, LLC under Section 6.04(a) of the Sale and Servicing Agreements. Notice ¶¶ 21–24, 28–30. But the potential for such indemnification claims does not weigh against mandatory abstention. The *Extended Stay* decision is directly on point: Judge Swain held there that the existence of "related to" jurisdiction resulting from defendants' potential indemnification claims against the debtors did not impact the court's determination that abstention was mandatory. 435 B.R. at 150, 152. Defendants' other asserted bases for "related to" jurisdiction—i.e., Wilmington's purported contribution claim and the supposed "interconnectedness" with the bankruptcy proceedings—similarly have no impact on a mandatory abstention determination. Neither of these asserted bases for "related to" jurisdiction call into question the plain fact—conceded by Defendants themselves in the Notice of Removal— that the claims here are not core bankruptcy claims. Notice ¶ 43; *cf. Extended Stay*, 435 B.R. at 145 (explaining that "[c]ases 'arising under' title 11 or 'arising in' a title 11 case are 'core proceedings'").

### D.    Section 1334 Is the Sole Basis for Federal Jurisdiction

There is no independent basis for federal jurisdiction. Defendants have not alleged diversity. Nor does federal question jurisdiction exist because all claims arise under New York

contract or state common law.  Defendants' own Notice of Removal confirms that their removal is based solely on 28 U.S.C. §§ 1334(b) and 1452.  Notice ¶¶ 25, 40.[2]

### E.    The Action Was Commenced in State Court

Plaintiffs commenced this action in the Supreme Court of the State of New York on January 12, 2026.  The weight of authority in this Circuit holds that a state court action satisfies the "commenced" requirement even if subsequently removed.  For example, in *Bradlees*, Judge Baer held that "[t]here is no textual support in the statute" for the contrary view.  2005 WL 106794, at *7.   In *Allstate*, the court applied mandatory abstention to a removed action, citing *Bradlees* favorably.  2011 WL 3628852, at *8 n.4.  And in *Extended Stay*, Judge Swain applied mandatory abstention to adversary proceedings that had been "originally commenced in the Supreme Court for the State of New York, New York County, removed pursuant to 28 U.S.C. § 1452 to this Court."  435 B.R. at 143; *see also In re Eight-115 Assocs., LLC,* 626 B.R. 383, 391 (Bankr. S.D.N.Y. 2021) (holding that the principles of mandatory abstention apply to a removed action).

### F.    The Action Can Be Timely Adjudicated in State Court

Under *Parmalat*, the party opposing remand must demonstrate that the state court cannot timely adjudicate the matter.  639 F.3d at 582.  The *Parmalat* framework considers four factors: (1) the backlog of the state court's calendar relative to the federal court's; (2) the complexity of the issues and respective expertise of each forum; (3) the status of the related bankruptcy proceeding; and (4) whether the state court proceeding would prolong administration of the estate.  639 F.3d at 580.  Every factor favors state court adjudication in this case.

---

[2]   While a removal notice can be amended under 28 U.S.C. §1653 to correct incorrect statements about jurisdiction already asserted, it cannot be amended to assert new types of jurisdiction. *Ryan v. Dow Chem. Co.*, 781 F. Supp. 934, 939-40 (E.D.N.Y. 1992).

The New York Supreme Court, Commercial Division is one of the most sophisticated commercial courts in the country, with dedicated judges experienced in complex financial disputes.  And the issues presented here are quintessential state law questions: interpretation of New York-law-governed contracts and application of common law fiduciary duty principles.  As the *Allstate* court observed, "[w]hile federal district courts naturally possess expertise in applying federal law, this advantage dissipates for cases alleging exclusively state claims."  2011 WL 3628852, at *10.

Similarly, in *Extended Stay*, the court found nothing in the record to indicate that the state law claims "cannot be timely adjudicated" in New York state court.  435 B.R. at 152.  In *Buechner v. Avery*, the court similarly found that "[e]very indication is that this case can be adjudicated in [New York] state court in a reasonably prompt manner."  2005 WL 3789110, at *6 (S.D.N.Y. July 8, 2005).

Moreover, any timeliness concerns are further diminished here because the Tricolor bankruptcy proceedings are in Chapter 7.  The Second Circuit recognized in *Parmalat* that "what might be timely in the Chapter 7 context is not necessarily timely in Chapter 11 cases where time is of the essence" because a Chapter 11 trustee may need expeditious resolution to fund a reorganization.  639 F.3d at 581.  That concern is absent in a Chapter 7 bankruptcy like Tricolor's.

* * *

In sum, every relevant consideration supports the application of mandatory abstention. This case should be remanded to state court, where Plaintiffs appropriately filed it.

## II.    PERMISSIVE ABSTENTION AND EQUITABLE REMAND INDEPENDENTLY SUPPORT REMAND

Even if mandatory abstention did not compel remand—and it does—the Court should independently exercise permissive abstention under 28 U.S.C. § 1334(c)(1) or equitable remand under 28 U.S.C. § 1452(b).  In *Buechner*, Judge Castel identified eight factors that courts consider

10

in deciding whether to exercise permissive abstention, which are "virtually the same" as those considered in an equitable abstention analysis: (1) the effect on the efficient administration of the bankruptcy estate; (2) the extent to which state law issues predominate; (3) the difficulty or unsettled nature of the applicable state law; (4) comity; (5) the degree of relatedness or remoteness to the main bankruptcy case; (6) the existence of a right to trial by jury; (7) prejudice to the involuntarily removed parties; and (8) the potential for duplicative and uneconomical use of judicial resources. 2005 WL 3789110, at *5. Each applicable factor favors remand.[3]

### A.    Remand Will Not Impede The Efficient Administration of the Estate

As in *Buechner*, "[t]here is no Chapter 11 proceeding pending" here; Tricolor is in a Chapter 7 liquidation. 2005 WL 3789110, at *5. And a state court action between non-debtor parties will not impede the Chapter 7 Trustee's administration of the Tricolor estates. Defendants notably do not identify any issue that must be resolved in this action before the Chapter 7 liquidation can proceed—their Notice argues only that the actions are connected, not that any precursor issues exist here. *See* Notice at 18–22. Nor can Defendants identify any efficiency rationale for retaining this action in the Southern District rather than returning it to state court where Plaintiffs chose to file it. All factors instead weigh in favor of remand.

*First,* Defendants cannot point to any efficiencies that might be achieved by removing this action to this Court, which would then be required to retain the case rather than transferring it to the Texas Bankruptcy Court because Defendants have waived all rights to such transfer.[4]    Any

---

[3]  The parties have agreed to waive their right to a jury, so that factor is inapplicable. *See* Indenture § 11.11; Sale and Servicing Agreement § 9.12.

[4]   Section 11.11 of each Indenture—to which Wilmington is a party—and Section 9.12 of each Sale and Servicing Agreement—to which both Wilmington and Vervent are parties—contain identical clauses providing, in relevant part, that each "HEREBY WAIVES … ANY OBJECTION TO VENUE OF ANY ACTION INSTITUTED HEREUNDER IN [NEW YORK STATE OR FEDERAL COURT]." Compl. ¶ 42; Indenture § 11.11; Sale and Servicing Agreement § 9.12.

coordination between this action and the bankruptcy proceeding will therefore require the involvement of two courts—one in New York and one in Texas—regardless of whether the action is remanded.  Defendants thus miss the point in contending that the Bankruptcy Court is already adjudicating "identical issues."  Notice ¶¶ 20, 38.  Even if this were correct (it is not[5]), there  are no efficiencies to be achieved from adjudicating these claims in this Court, as opposed to across the street in New York state court.  And the absence of any efficiency rationale for retaining state law claims in federal court, as the *Buechner* court observed, "favors remand."  2005 WL 3789110, at *6.

*Second*, Defendants offer no plausible reason why resolution of Plaintiffs' claims in this Court, rather than in the New York Commercial Division, would aid the efficient administration of the bankruptcy estate.  They cannot, as this case involves complex questions of New York law that the Commercial Division was specifically designed to handle.  For example, there is nothing about Defendants' potential indemnification claims against the Tricolor estates—their principal argument for the existence of "related to" jurisdiction—that would make it more efficient to resolve Plaintiffs' claims in this Court rather than in state court.  Indeed, it is impossible to fathom any reason why adjudication of Plaintiffs' claims in this Court would benefit the resolution of any resulting indemnification claims in the bankruptcy proceedings.  Thus, it is not surprising that this Court has held that potential indemnification rights warrant only limited weight in the permissive

---

Such clauses operate to preclude transfer. *See ICICI Bank Ltd. v. Essar Glob. Fund Ltd.*, 565 B.R. 241, 253 (S.D.N.Y. 2017) (denying motion to transfer because, through an identical waiver clause, Defendants had "contracted away their right to challenge the venue chosen by Plaintiff").

[5]   Defendants err in arguing that the issues are "identical": Plaintiffs' objection to Vervent's fee motion raised a narrow issue as to whether the Bankruptcy Court could authorize the payment of fees to Vervent for services that it is currently providing; whereas the Complaint seeks damages for breaches arising from custodial neglect, Reserve Fund failures, Transition Cost overcharges, and fiduciary violations. *See id.* ¶ 38; Compl. ¶¶ 84-119.  These are not the same issues at all.

abstention and equitable remand analysis. *See, e.g.*, *Buechner*, 2005 WL 3789110, at \*6 (holding that "[a] potential indemnification claim against the bankrupt estate of one defendant is a factor that weighs somewhat against abstention, but is not alone a ground for avoiding an equitable remand.").[6]

### B.    State Law Issues Predominate In This Action

As noted, Plaintiffs assert only state law claims, all of which arise under New York law. No federal statutory or common law claim is asserted, and no issue of federal law must be resolved to adjudicate any of Plaintiffs' four causes of action. As the *Buechner* court noted, where "[o]nly state law claims are asserted, all purportedly arising under New York law," this factor "weighs in favor of remand." 2005 WL 3789110, at \*5. The *Allstate* court reached the same conclusion, observing that "[w]hile federal courts naturally possess expertise in applying federal law, this advantage dissipates for cases alleging exclusively state claims." 2011 WL 3628852, at \*10. That same reasoning applies here, where the claims turn entirely on the interpretation of New York-law-governed contracts and the application of common law fiduciary duty principles.

### C.    There Are No Difficult or Unsettled Issues of State Law

The claims present questions of New York contract interpretation and common law fiduciary duties—areas in which the New York Commercial Division has unmatched expertise. The Commercial Division handles securitization disputes routinely and is among the most sophisticated commercial courts in the country, with dedicated judges experienced in the precise issues presented here: the interpretation of indentures, custodial obligations, and post-default

---

[6] Notably, *Buechner* held that potential indemnification claims were not a basis to avoid equitable remand in circumstances where defendants could have sought to transfer the action (and any associated indemnification claims) to the Bankruptcy Court. By contrast, Defendants here have waived the right to do so, *see supra* § II.A; *infra*. § II.D, further weakening any weight the Court might give to this factor.

trustee duties under New York law.  *See Worldview*, 611 B.R. at 19 (finding this factor favored abstention where claims "will turn on the meaning of the contracts and course of dealing between the parties and on questions of fiduciary duties under New York law").  Far from presenting any questions that might warrant federal involvement, the applicable New York and common law is well developed—and the New York Commercial Division is well positioned to apply it.   In *Buechner*, the court likewise found no basis to conclude that the state law issues were "novel, complex or unsettled," and held that this factor did not weigh against remand.  2005 WL 3789110, at *5.

      **D.**      **Judicial Comity Favors Remand**

The *Buechner* court held that "[t]he interests of comity are promoted by allowing the claims to remain where the plaintiffs elected to bring them, *i.e.* state court."  2005 WL 3789110, at *6. The same principle applies with particular force here given that Defendants contractually agreed to submit to the jurisdiction of the New York state courts and waived any objection to venue in that forum.   *See* Indenture § 11.11 (providing that each party "AGREES TO THE NON-EXCLUSIVE JURISDICTION OF THE COURTS OF THE STATE OF NEW YORK, LOCATED IN THE BOROUGH OF MANHATTAN" and "WAIVES ANY OBJECTION … TO VENUE OF ANY ACTION INSTITUTED HEREUNDER IN ANY OF THE AFOREMENTIONED COURTS"); *see also* Sale and Servicing Agreement § 9.12 (same). Having waived their right to object to proceedings in the forum Plaintiffs selected, Defendants should not now be heard to argue that comity favors federal adjudication.  Rather, as the *Bradlees* court observed, a defendant's "attempt to manufacture bankruptcy jurisdiction in a case that was

once properly before the New York State Supreme Court is, at best, misguided" and "forum shopping should not be rewarded." 2005 WL 106794, at *8.[7]

E.    **This Action Has Limited Relation To The Bankruptcy Case**

Defendants point to no issue that must be resolved in this action before the Bankruptcy proceeding can advance. *Supra* § II(A). And while Defendants invoke "related to" jurisdiction as a basis for removal, none of the facts purportedly supporting such jurisdiction weighs against permissive abstention and remand.

*First*, Defendants err in asserting that the state court would need to determine ownership of tens of thousands of loans, a task allegedly intertwined with the Bankruptcy Court's collateral mapping process, to resolve Plaintiffs' claims. Notice ¶¶ 36–37. The majority of Plaintiffs' claims rest on Defendants' alleged failure to perform discrete contractual obligations post-bankruptcy— distributing Reserve Funds, paying interest, and limiting Transition Costs—that are entirely independent of any loan-by-loan determination. Compl. ¶¶ 96–112. Plaintiffs' sole remaining breach of contract claim against Wilmington as Custodian asserts that Wilmington failed to perform its duty of certifying receipt of the original loan documents that would have secured the trusts' first-priority interest in allegedly double-pledged loans. Compl. ¶¶ 84–95. Wilmington's performance of its custodial function is separate and distinct from the possible ownership disputes that might be resolved in the Bankruptcy Court or elsewhere.

*Second,* Defendants raise the prospect of contribution claims against the bankruptcy estates. Notice ¶¶ 31-32. Yet it is black letter law that no contribution claims can arise in respect of Plaintiffs' three breach of contract claims against Wilmington and Vervent: New York law prohibits contribution for such claims. *See LNC Inv., Inc. v. First Fid. Bank, Nat. Ass'n*, 935 F.

---

[7]    Notably, the *Bradlees* court reached this holding despite finding that the removed case was "tangentially related to" the bankruptcy action. *Id*. at *3.

Supp. 1333, 1346 (S.D.N.Y. 1996) ("claims for contribution may not be brought in defense of a breach of contract claim") (citing *Bd. of Educ. of Hudson City Sch. Dist. v. Sargent, Webster, Crenshaw & Folley*, 71 N.Y.2d 21, 27–28 (1987)). At most, Defendants could have a contribution claim for only one of Plaintiffs' four claims (the fiduciary breach claim), as asserted against only one of two Defendants (Wilmington). But even that claim fails to meet the "[t]he critical requirement for [contribution, which] is that the breach of duty by the contributing party must have had a part in causing or augmenting the injury for which contribution is sought." *Nassau Roofing & Sheet Metal Co. v. Facilities Dev. Corp.*, 71 N.Y.2d 599, 603 (1988). The breach of fiduciary duty claim against Wilmington is based on independent, post-default, breaches in which the Tricolor Debtors played no role and which caused injury distinct from any Tricolor fraud. Moreover, any contribution claim that Wilmington might assert will not accrue until after liability is established. *See SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 340 (2d Cir. 2018) ("Unlike indemnification claims, contribution claims do not accrue until after liability is established."). Accordingly, remand is warranted as no potentially related contribution claims will arise against the bankruptcy estate until this action is resolved, and they may not arise at all. *See In re WorldCom, Inc. Sec. Litig.*, 293 B.R. 308, 319 (S.D.N.Y. 2003) (citing *Arnold v. Garlock, Inc.*, 278 F.3d 426, 440 (5th Cir. 2001) as example of court allowing remand where removing defendant "had not shown a likelihood of success on any contribution claim.").

*Third*, Defendants emphasize that Plaintiffs have participated in the bankruptcy case and submitted to the Bankruptcy Court's jurisdiction on certain matters. Notice ¶¶ 3, 16–19. But this is entirely irrelevant. Participation as a creditor or party in interest does not waive the right to litigate independent state law claims against non-debtor parties in state court. In *Extended Stay*,

for example, plaintiffs had actively participated in the bankruptcy proceedings—yet the court remanded the subsequently filed state court action.  435 B.R. at 151–52.[8]

### F.    Plaintiffs Will Suffer Prejudice Absent Remand

Plaintiffs filed this action in the Commercial Division of the Supreme Court of the State of New York—a forum they selected deliberately, and to which Defendants contractually submitted. *See* Indenture § 11.11; Sale and Servicing Agreement § 9.12.  Removal to this Court over Plaintiffs' objection strips Plaintiffs of that chosen forum.  As the *Buechner* court recognized, "[t]he plaintiffs have elected to bring their claims in Supreme Court, New York County.  If the case is litigated in this Court, then plaintiffs will be denied their choice of forum."  2005 WL 3789110, at *6.  That prejudice is compounded here because Defendants are seeking to escape a forum to which they contractually agreed.  *See* Indenture § 11.11; Sale and Servicing Agreement § 9.12.

### G.    Remand Will Serve Judicial Economy; Removal Does Not

Remand poses no risk of duplicative proceedings, and retention of this case in federal court does not further judicial economy.  As set forth above, Plaintiffs' breach of contract and breach of fiduciary duty claims against Wilmington and Vervent are factually and legally distinct from the Chapter 7 Trustee's administration of the Tricolor estates in the Texas Bankruptcy Court.  *See supra* § I.

---

[8] Plaintiffs' withdrawn Rule 2004 motion in the bankruptcy was a discovery device—not a claim for relief—and in any event it was not filed against Defendants.  Defendants offer a similar red herring in pointing to Plaintiffs' ongoing investigation of claims against other parties associated with Tricolor's fraud.  Notice ¶ 3 (citing a footnote in the Complaint).  Plaintiffs have not brought such claims in the Bankruptcy Court.  Nor are Defendants correct to suggest (Notice ¶ 5) that the Chapter 7 Trustee will be investigating the contractual and breach of duty claims that Plaintiffs assert against Defendants in this case.  The claims brought here do not belong to any of the debtors and could not be brought in the bankruptcy case.

Moreover, retaining this case in federal court would yield no efficiencies. *First*, as Defendants concede, *see* Notice ¶ 43, Plaintiffs' claims are (at most) non-core state law claims that this Court cannot refer to the Bankruptcy Court for final adjudication without the parties' consent. *See* 28 U.S.C. § 157(c)(1)–(2). *Second*, there is no pending action in this District with which these claims could be consolidated. Nor can any efficiencies be achieved by transferring this case to the Texas Bankruptcy Court (even assuming that would yield any efficiency, which is doubtful given the claims and parties in this case) because Defendants have waived that right. *See supra* § II(A).

All told, this case is nothing like *WorldCom*, where multiple state court actions had been removed, with close connections between the defendants and the debtor and overlapping federal statute litigation, which suggested that remand "could slow the pace of litigation dramatically" by producing duplicative motion practice, repetitious discovery, and parallel adjudication of common issues by "courts across the country." 293 B.R. at 331. Rather, there is only a single state court action, with no overlapping federal litigation and no common issues requiring parallel adjudication. Remand to the Commercial Division—the forum Plaintiffs chose and to which Defendants contractually submitted—will place this matter back in the hands of the specialist New York court best placed to efficiently resolve these purely state law claims.

## III.    DEFENDANTS HAVE WAIVED ANY OBJECTION TO REMAND

A third, independent, basis to grant remand exists, which is that Defendants waived their right to remove. Section 11.11 of each Indenture—to which Wilmington is a party—and Section 9.12 of each Sale and Servicing Agreement—to which both Wilmington and Vervent are parties—contain the following identical forum selection clauses which bar the filing of a notice of removal:

> EACH OF THE PARTIES HERETO HEREBY AGREES TO THE NON-EXCLUSIVE JURISDICTION OF THE COURTS OF THE STATE OF NEW YORK, LOCATED IN THE BOROUGH OF MANHATTAN, AND THE FEDERAL COURTS LOCATED

WITHIN THE STATE OF NEW YORK IN THE BOROUGH OF MANHATTAN. **<u>EACH OF THE PARTIES HERETO HEREBY WAIVES</u>** ANY OBJECTION BASED ON *FORUM NON CONVENIENS*, AND **<u>ANY OBJECTION TO VENUE OF ANY ACTION INSTITUTED HEREUNDER IN ANY OF THE AFOREMENTIONED COURTS</u>** AND CONSENTS TO THE GRANTING OF SUCH LEGAL OR EQUITABLE RELIEF AS IS DEEMED APPROPRIATE BY SUCH COURT.

Indenture § 11.11; Sale and Servicing Agreement § 9.12. (emphasis added).

"It is well established that a forum selection clause may act as a waiver of defendant's right to remove an action to federal court." *JP Morgan Chase Bank, N.A. v. Reijtenbagh*, 611 F. Supp. 2d 389, 390 (S.D.N.Y. 2009) (quoting *John's Insulation, Inc. v. Siska Constr. Co.*, 671 F. Supp. 289, 294 (S.D.N.Y. 1987)). While such a waiver must be "clear and unequivocal," *id.*; *Rabbi Jacob Joseph Sch. v. Province of Mendoza*, 342 F. Supp. 2d 124, 128 (E.D.N.Y. 2004), "[p]arties are free to bind themselves to forum selection clauses that trump what would otherwise be a right to remove cases to federal court." *Yakin v. Tyler Hill Corp.*, 566 F.3d 72, 76 (2d Cir. 2009); *see also Bankers Healthcare Grp., LLC v. Goldsol, Inc.*, 2024 WL 3451037, at *3 (N.D.N.Y. July 18, 2024). The forum selection clauses at issue here easily satisfy that standard.

The operative clauses contain an express waiver by Defendants of "any objection to venue of any action instituted hereunder in any of the aforementioned courts," which includes New York state court. And, critically, Defendants consented "to the granting of such legal or equitable relief as is deemed appropriate by such court." This language provides the filing party with the ability to choose between the state and federal venues and binds the adversary to that choice. Plaintiffs instituted this action in New York Supreme Court—which is "any" of the contractually designated courts—and Defendants are therefore bound to the state court's decision on relief. *See Lancer Ins. Co. v. MKBS, LLC*, 2008 WL 5411090, at *3 (E.D.N.Y. Dec. 22, 2008) (granting remand where the parties "irrevocably waive[d]…any objection…to the laying of venue of any such suit…*and*

the right to object, with respect to any such suit, action or proceeding brought in any such court[.]") (emphasis added); *Koninklijke Philips Elecs v. Dig. Works, Inc.*, 358 F. Supp. 2d 328, 330–31 (S.D.N.Y. 2005) (granting remand where Plaintiff had "sole discretion" to submit a dispute to the state or federal court venues).[9]

The forum selection clauses here are presumptively enforceable. In the commercial context, forum selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972); *Bankers Healthcare Grp.*, 2024 WL 3451037, at *3. The enforceability of a contractual forum selection clause is governed by federal law, and courts in this Circuit consider three factors: "(1) whether the clause was reasonably communicated to the party resisting enforcement; (2) whether the clause is mandatory or permissive … ; and (3) whether the claims and parties in the suit are subject to the forum selection clause." *Martinez v. Bloomberg LP*, 740 F.3d 211, 217 (2d Cir. 2014); *Bankers Healthcare Grp.*, 2024 WL 3451037, at *3. All three factors are met. The clauses appear in contracts to which Defendants are signatories, so they were plainly communicated to Defendants. The clauses contain obligatory venue language— namely, a waiver of "any objection to venue of any action"—rather than merely permissive

---

[9] Other decisions in this Circuit have found that forum selection clauses did not require remand where the relevant clauses did not contain language binding one party to the other's choice between two forums. *See Cong. Fin. Corp. v. Bortnick*, 2000 WL 1634248, at *1–*2 (S.D.N.Y. Oct. 31, 2000) (denying remand where the parties simply agreed to waive "objection based on venue or forum non conveniens with respect to any action instituted therein[.]"); *Wexler v. Allegion (UK) Ltd.*, 2016 WL 6662267, at *3 (S.D.N.Y. Nov. 9, 2016) (denying remand where there was "no language mandating that plaintiff's selection 'exclude the other specified New York court.'") (citing *Cong. Fin. Corp.*). Those decisions are inapposite because, here, in addition to waiving "any objection to venue of any action" instituted in a New York court, each party "consents to granting of such legal or equitable relief as is deemed appropriate by such court." Indenture § 11.11; Sale and Servicing Agreement § 9.12. In other words, the parties here agreed to be bound by the rulings of the court chosen for adjudication of the claims.

jurisdictional language.  And this action indisputably arises under the Indentures and Sale and Servicing Agreements and involves only parties to those agreements.  Plainly, enforcement of these clauses would not be "unreasonable or unjust," nor were they procured through "fraud or overreaching."  *Martinez*, 740 F.3d at 217.  By filing a Notice of Removal, Defendants lodged precisely the type of "objection to venue" that they agreed not to make.  The Court should hold Defendants to their bargain and remand.

## **<u>CONCLUSION</u>**

Plaintiffs respectfully request that this action be remanded to the New York Supreme Court, Commercial Division.  Plaintiffs further reserve their right to seek attorneys' fees and costs incurred in connection with the removal under 28 U.S.C. § 1447(c).

DATED: March 9, 2026          Respectfully submitted
New York, New York

                              QUINN EMANUEL URQUHART &
                                  SULLIVAN, LLP


                              By: */s/ Blair A. Adams*

                                  Blair A. Adams
                                  Toby E. Futter


                              295 5th Avenue
                              New York, New York 10016-7103
                              (212) 849-7000

                              *Attorneys for Plainitffs*

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that the foregoing Memorandum of Law complies with the Court's word-count limitations. The foregoing Memorandum contains 6,693 words as determined by the Word Count feature of Microsoft Word.

/s/ *Blair A. Adams*
Blair A. Adams
*Counsel for Plaintiffs*