**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ONE WILLIAM STREET CAPITAL MASTER FUND LTD., OWS ABS MASTER FUND, LTD., OWS ABS IV, L.P., OWS ABS IV SUB I, LLC, OWS CREDIT OPPORTUNITY I, LLC, OWS CREDIT OPPORTUNITY SUB I, LTD., 1WS CREDIT INCOME FUND, 1WSCI SUB I, LLC, CLEAR HAVEN INVESTMENTS LLC, CLEAR HAVEN INVESTMENT FUND LP, CLEAR HAVEN TOTAL RETURN PARTNERS LP, CLEAR HAVEN ULTRA SHORT INVESTMENT GRADE BOND FUND LP, SUPERIOR RISK SOLUTIONS (SAC) LTD, CLEAR HAVEN UMF FUND LP, CALIFORNIA INSURANCE COMPANY, CATLIN INSURANCE COMPANY, CONSTITUTION INSURANCE COMPANY, FLORIDA CASUALTY INSURANCE COMPANY, TEXAS INSURANCE COMPANY, EF SECURITIES LLC, CRESCENT II FUND, L.P., ELLINGTON PRIVATE OPPORTUNITIES MAIN MASTER FUND III LP, ELLINGTON M CREDIT MASTER FUND LTD., ELLINGTON SPECIAL RELATIVE VALUE FUND LLC, and SAGICOR LIFE INSURANCE COMPANY, <br><br> Plaintiffs, <br><br> -against- <br><br> WILMINGTON TRUST, NATIONAL ASSOCIATION and VERVENT INC., <br><br> Defendants. | Case No. 1:26-cv-01123 |

<u>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' CROSS-MOTION AND REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO REMAND**</u>

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

PRELIMINARY STATEMENT ..................................................................................................... 1

ARGUMENT .............................................................................................................................. 4

I.      THE COURT SHOULD DECIDE REMAND BEFORE TRANSFER ............................. 4

II.     MANDATORY ABSTENTION REQUIRES REMAND ...................................................... 6

        A.     The *Parmalat* Factors Support Timely Adjudication in State Court ........................ 6

        B.     Defendants' Cited Authorities Are Distinguishable ................................................. 11

III.    PERMISSIVE ABSTENTION AND EQUITABLE REMAND
        INDEPENDENTLY SUPPORT REMAND ...................................................................... 12

        A.     The Overlap Between This Action and the Bankruptcy Cases Is Overstated ........ 13

        B.     Remand Will Not Impede Efficient Administration of the Estates ......................... 15

        C.     The Remaining *Buechner* Factors Confirm That Remand Is Appropriate ............ 15

IV.    DEFENDANTS' CROSS-MOTION TO TRANSFER SHOULD BE DENIED ............. 16

        A.     The Forum Selection Clauses Bar Transfer ............................................................. 17

        B.     The Section 1404(a) Factors Do Not Support Transfer .......................................... 20

V.     DEFENDANTS HAVE WAIVED THEIR RIGHT TO REMOVE .................................. 22

CONCLUSION ........................................................................................................................... 26

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*110 Voice Rd., LLC v. Quincy Compressor LLC*,
2020 WL 8922855 (E.D.N.Y. Mar. 4, 2020)................................................................25

*Aguas Lenders Recovery Grp. v. Suez, S.A.*,
585 F.3d 696 (2d Cir. 2009) .........................................................................................21

*Allstate Ins. Co. v. Ace Sec. Corp.*,
2011 WL 3628852 (S.D.N.Y. Aug. 17, 2011)............................................................6, 8

*Androb Jewelry Serv., Inc. v. Malca-Amit USA, LLC*,
2017 WL 4712422 (S.D.N.Y. Sept. 25, 2017) .............................................................18

*Anselmo v. Univision Station Grp., Inc.*,
1993 WL 17173 (S.D.N.Y. Jan. 15, 1993) ...................................................................18

*Argosy Capital Group III, L.P. v. Triangle Capital Corp.*,
2019 WL 140730 (S.D.N.Y. Jan. 9, 2019) ...................................................................19

*Armco Inc. v. N. Atl. Ins. Co.*,
68 F. Supp. 2d 330 (S.D.N.Y. 1999)............................................................................17

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*,
571 U.S. 49 (2013) .......................................................................................................21

*Bank of N.Y. v. Bank of Am.*,
861 F.Supp. 225 (S.D.N.Y. 1994) .................................................................................5

*Bankers Healthcare Group, LLC v. Goldsol, Inc.*,
024 WL 3451037 (N.D.N.Y. July 18, 2024) ...............................................................25

*In re Bradlees, Inc.*,
2005 WL 106794 (S.D.N.Y. Jan. 19, 2005) ...........................................................15, 16

*Buechner v. Avery*,
2005 WL 3789110 (S.D.N.Y. July 8, 2005) ...................................................... 13, 15, 16

*CCM Pathfinder Pompano Bay, LLC v. Compass Financial Partners LLC*,
396 B.R. 602 (S.D.N.Y. 2008) .....................................................................................14

*City of New York v. Pullman, Inc.*,
477 F. Supp. 438 (S.D.N.Y. 1979)...........................................................................24, 26

*Congress Financial Corp. v. Bortnick*,
   2000 WL 1634248 (S.D.N.Y. Oct. 31, 2000) .........................................................................22

*Credit Suisse AG v. Appaloosa Inv. Ltd. P'ship I*,
   2015 WL 5257003 (S.D.N.Y. Sept. 9, 2015) .......................................................................4, 19

*Del. Tr. Co. v. Wilmington Tr., N.A.*,
   534 B.R. 500 (S.D.N.Y. 2015) ...........................................................................................4

*Deutsche Oel & Gas S.A. v. Energy Cap. Partners
   Mezzanine Opportunities Fund A, LP*,
   2020 WL 5814233 (S.D.N.Y. Sept. 30, 2020) ....................................................................4, 19

*In re Extended Stay Inc.*
   435 B.R. 139, 150, 152 (S.D.N.Y. 2010).  ......................................................................10, 15

*FMS Bonds, Inc. v. Bank of New York Mellon*,
   2016 WL 4059155 (S.D.N.Y. July 28, 2016).......................................................................17

*In re General Growth Properties, Inc.*,
   460 B.R. 592 (Bankr. S.D.N.Y. 2011) ...............................................................................11

*George Junior Republic in Pa. v. Williams*,
   2008 WL 763304 (E.D. Pa. Mar. 19, 2008).........................................................................5

*Goldman v. Grand Living II, LLC*,
   2021 WL 4033277 (E.D.N.Y. Sept. 3, 2021) ....................................................................4, 20

*In re Harvest Sherwood Food Distribs., Inc.*,
   2025 WL 3178864 (Bankr. N.D. Tex. Nov. 13, 2025) ..............................................................8

*Hohl v. Bastian*,
   279 B.R. 165 (W.D. Pa. 2002)..........................................................................................5

*ICICI Bank Ltd. v. Essar Glob. Fund Ltd.*,
   565 B.R. 241 (S.D.N.Y. 2017) ............................................................................. 21, 24, 25

*India.com, Inc. v. Dalal*,
   412 F.3d 315 (2d Cir. 2005) ............................................................................................23

*Ixe Banco v. MBNA America Bank*,
   2007 WL 9813416 (S.D.N.Y. Apr. 26, 2007) .....................................................................22

*JP Morgan Chase Bank, N.A. v. Reijtenbagh*,
   611 F. Supp. 2d 389 (S.D.N.Y. 2009)................................................................................26

*Kerusa Co. LLC v. W10Z/515 Real Est. Ltd. P'ship*,
   2004 WL 1048239 (S.D.N.Y. May 7, 2004) .......................................................................13

*Koninklijke Philips Electronics v. Digital Works, Inc.,*
    358 F. Supp. 2d 328 (S.D.N.Y. 2005)........................................................................25

*Krys v. Klejna*,
    658 F. App'x 1 (2d Cir. 2016).................................................................................11

*Lancer Insurance Co. v. MKBS, LLC,*
    2008 WL 5411090 (E.D.N.Y. Dec. 22, 2008) .......................................................24

*Lavazza Premium Coffees Corp. v. Prime Line Distribs. Inc.*,
    575 F. Supp. 3d 445 (S.D.N.Y. 2021).....................................................................18

*LNC Inv., Inc. v. First Fid. Bank, Nat. Ass'n*,
    935 F. Supp. 1333 (S.D.N.Y. 1996).......................................................................10

*M/S Bremen v. Zapata Off–Shore Co.*,
    407 U.S. 1 (1972) ...............................................................................................22, 26

*Martinez v. Bloomberg LP*,
    740 F.3d 211 (2d Cir. 2014)....................................................................................26

*In re Miami Metals I, Inc.*,
    625 B.R. 593 (Bankr. S.D.N.Y. 2021) ......................................................................9

*Parmalat Cap. Fin. Ltd. v. Bank of Am. Corp.*,
    671 F.3d 261 (2d Cir. 2012) .....................................................................................9

*Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*,
    639 F.3d 572 (2d Cir. 2011) .............................................................................6, 7, 9

*Rabbi Jacob Joseph School v. Province of Mendoza*,
    342 F. Supp. 2d 124 (E.D.N.Y. 2004).....................................................................26

*In re Refco, Inc. Securities Litigation*,
    628 F. Supp. 2d 432 (S.D.N.Y. 2008)......................................................................11

*Ritchie Capital Management, L.L.C. v. JPMorgan Chase & Co.*,
    532 B.R. 461 (S.D.N.Y. 2014) ................................................................................14

*RJ Cap., S.A. v. Lexington Cap. Funding III, Ltd.*,
    2013 WL 1294515 (S.D.N.Y. Mar. 30, 2013).........................................................17

*In re S.G. Phillips Constructors, Inc.*,
    45 F.3d 702 (2d Cir. 1995).........................................................................................5

*Sempra Energy Trading Corp. v. Algoma Steel, Inc.*,
    2001 WL 282684 (S.D.N.Y. Mar. 22, 2001),
    *aff'd*, 300 F.3d 242 (2d Cir. 2002).........................................................................17

*Smartmatic USA Corp. v. Dominion Voting Systems Corp.*,
 2013 WL 5798986 (S.D.N.Y. Oct. 22, 2013) ................................................................5

*SPV Osus Ltd. v. UBS AG*,
 882 F.3d 333 (2d Cir. 2018) .........................................................................................10

*Stahl v. Stahl*,
 2003 WL 22595288 (S.D.N.Y. Nov. 7, 2003)................................................................4

*In re Tricolor Holdings, LLC et al*.
 (Bankr. N.D. Tex. Feb. 11, 2026) (ECF No. 785)...................................................8, 19

*In re Tronox*,
 603 B.R. 712 (Bankr. S.D.N.Y. 2019), *subsequently aff'd sub nom.*
 *In re Tronox Inc.*, 2022 WL 16753119 (2d Cir. 2022) ...........................................5, 13

*Truist Bank v. Nephserv, LLC*,
 2021 WL 164444 (N.D. Tex. Jan. 13, 2021) ..................................................................8

*U.S. Security Holdings, Inc. v. Andrews*,
 2021 WL 796687 (S.D.N.Y. Mar. 2, 2021) ...........................................................19, 20

*In re Vantage Benefits Adm'rs, Inc.*,
 2024 WL 3842796 (Bankr. N.D. Tex. Aug. 14, 2024) ...................................................8

*Von Graffenreid v. Craig*,
 246 F. Supp. 2d 553 (N.D. Tex. 2003)..........................................................................25

*Wexler v. Allegion (UK) Ltd.*,
 2016 WL 6662267 (S.D.N.Y. Nov. 9, 2016)...........................................................22, 24

*Winstar Holdings, LLC v. Blackstone Group L.P.*,
 2007 WL 4323003 (S.D.N.Y. Dec. 10, 2007) ..............................................................16

*In re WorldCom, Inc. Sec. Litig.*,
 293 B.R. 308 (S.D.N.Y. 2003) ......................................................................................12

*Worldview Ent. Holdings Inc. v. Woodrow*,
 611 B.R. 10 (S.D.N.Y. 2019) ......................................................................................8, 9

*Yakin v. Tyler Hill Corp.*,
 566 F.3d 72 (2d Cir. 2009) (Opp. ) ..............................................................................24

## Statutes

28 U.S.C. § 157(c)(1) ............................................................................................................20

28 U.S.C. § 1334(c)(1) .....................................................................................................12, 13

28 U.S.C. § 1334(c)(2) ...........................................................................................................1, 5, 6

28 U.S.C. § 1409(a) ...................................................................................................................20

28 U.S.C. § 1447(c) .................................................................................................................4, 27

28 U.S.C. § 1452(b).....................................................................................................................12

## <u>Other Authorities</u>

Douglas G. Baird & Edward R. Morrison, *Adversary Proceedings in Bankruptcy: A Sideshow*, 79 Am. Bankr. L.J. 951, 959 (2005) .......................................................................7

Local Civil Rule 7.1(c).................................................................................................................27

## PRELIMINARY STATEMENT

Defendants' opposition (Dkt. No. 43) confirms what Plaintiffs' opening motion already demonstrated—this is a New York-law contract and fiduciary duty dispute that belongs in state court. Defendants seek to avoid mandatory abstention but concede five of the six mandatory abstention factors. Opp. at 22. Their opposition rests entirely on the sixth factor—timely adjudication—which they attempt to buttress with a belated cross-motion to transfer this action to the Bankruptcy Court in Texas; a motion they have already waived the right to bring. For multiple independent reasons, remand should be granted and transfer should be denied.

*First*, Defendants seek to avoid the merits through their transfer cross-motion. But this District's settled practice is unambiguous—when competing remand and transfer motions are pending, the court will resolve the remand motion first. This rule is sound: if Section 1334(c)(2) commands this Court to abstain, then there is nothing to transfer. Defendants' lead case, *Appaloosa*, provides no basis to depart from settled practice. In that case, Judge Scheindlin addressed transfer before abstention only after concluding "unequivocal[ly]" that mandatory abstention could not apply. By contrast, Defendants here concede five of the six abstention factors. Their near complete capitulation provides no basis for this Court to depart from precedent—the statutory mandate must be considered before any question of transfer can arise.

*Second*, Defendants fall far short of meeting their burden to overcome mandatory abstention. They concede that Plaintiffs' claims rest exclusively on state law; that the claims do not arise under Title 11; that Section 1334 provides the sole basis for federal jurisdiction; that this action was commenced in state court; and that Plaintiffs' remand motion is timely. As to the sole disputed factor—timely adjudication—Defendants attempt a bait and switch: they presuppose the transfer they seek and compare the Commercial Division to the bankruptcy court in Texas. But *Parmalat* requires a comparison of the Commercial Division to *this* Court. That correct

1

comparison strongly favors remand given complex cases in the Commercial Division take, on average, only marginally longer than in this District.  Any difference would be further reduced in this case given Plaintiffs' claims turn on New York contract and fiduciary duty law—areas in which the Commercial Division specializes and in which federal courts hold no advantage.

The Chapter 7 context of this case further diminishes the importance of the timeliness factor: unlike a Chapter 11 reorganization, there is no plan to fund, no going-concern business to preserve, and no administrative deadline that state court resolution would jeopardize.  Defendants' timeliness arguments based on their alleged indemnification and contribution claims also fail because contribution is barred for three of Plaintiffs' four claims, and any fiduciary duty contribution claim has not yet accrued.  *Extended Stay* resolved a near identical configuration in plaintiffs' favor.

*Third*, even if mandatory abstention did not apply (which it does), Defendants likewise cannot defeat permissive abstention and equitable remand.  The *Buechner* factors align decisively with remand and Defendants overreach in asserting that this action is "inextricably tied" to the Bankruptcy Cases: the Vervent Interim Fee Order—Defendants' principal evidence of overlap—resolved a narrow administrative fee dispute and *expressly disclaimed* any preclusive effect outside of the bankruptcy.  It has no bearing and can have no bearing on the contract and fiduciary duty claims at the heart of this action, all of which rest on discrete contractual breaches independent of the actions being undertaken by the Chapter 7 Trustee.  Judicial comity, the predominance of state law issues, the prejudice to Plaintiffs if they are denied their chosen forum, and the absence of any consolidation opportunity in this District all point in the same direction.  Defendants' indemnification arguments fare no better under *Buechner* than under *Parmalat*: a potential indemnification claim is not, standing alone, sufficient to defeat equitable remand.

*Fourth*, even if the Court were to deny remand, transfer to Texas would be improper given the binding forum selection clauses in the Indenture and the Sale and Servicing Agreements. The Indenture forum selection clauses cover, at minimum, two of Plaintiffs' four claims—both the interest payment breach and the fiduciary duty claim are "instituted hereunder" the Indenture— and a clause covering some claims weighs strongly in favor of retaining the remaining interrelated claims. // *Appaloosa* does not compel a different result: that court overrode a forum selection clause only because plaintiff sought to enjoin challenges to estate property and undermine plan confirmation—a palpable conflict with the bankruptcy proceeding that is entirely absent here.[1] And the Section 1404(a) factors provide no independent basis for transfer: the operative facts concern New York-law-governed contracts; the Tricolor insiders whose Texas location Defendants emphasize are not necessary witnesses to any of Plaintiffs' claims; and Plaintiffs are not forum shopping by filing in the forum specified by Defendants' contracts.

*Fifth*, Defendants have waived their right to transfer. The forum selection clauses do not merely designate New York as a permissible forum—they affirmatively commit each party to accept the granting of relief by whichever designated court the filing party selects. That "consent to relief" language satisfies the second *Pullman* element and distinguishes this case from every authority Defendants cite. *Ixe Banco*, *Congress Financial*, and *Wexler* each involved clauses containing only venue and *forum non conveniens* waivers with no consent-to-relief provision; those courts found neither *Pullman* element satisfied. Here, by contrast, Defendants did not merely consent to the New York state court's jurisdiction—they also consented to the granting of relief

---

[1]  Notably, the Chapter 7 Trustee has not in any way indicated that this action interferes with or overlaps with the Chapter 7 bankruptcy case.

by that court.  A party that has made that commitment in writing cannot unilaterally remove the action to a different forum.

The Court should deny Defendants' motion to transfer, grant Plaintiffs' motion to remand based on mandatory abstention, permissive abstention, equitable remand, and contractual waiver, and reserve Plaintiffs' right to seek attorneys' fees and costs under 28 U.S.C. § 1447(c).

**ARGUMENT**

## I.    THE COURT SHOULD DECIDE REMAND BEFORE TRANSFER

This District's settled practice requires the Court to address remand before transfer.  This rule is based on jurisdictional common sense: because the transfer statute permits transfer of only those actions within the court's jurisdiction, the court must first determine whether it has jurisdiction.  *Stahl v. Stahl*, 2003 WL 22595288, at *2 (S.D.N.Y. Nov. 7, 2003) ("When presented with competing motions to remand a case and to transfer venue, a court is to consider the remand motion first, and then address the motion to transfer venue only if it first denies the motion to remand."); *Goldman v. Grand Living II, LLC*, 2021 WL 4033277, at *6 n.5 (E.D.N.Y. Sept. 3, 2021) ("Since abstention is mandatory, any motion to transfer would necessarily fail because the action could not have initially been brought in the transferee court.") (internal citation omitted). Courts in this District apply that rule consistently.  *See, e.g.*, *Del. Tr. Co. v. Wilmington Tr., N.A.*, 534 B.R. 500, 510-11 (S.D.N.Y. 2015); *Deutsche Oel & Gas S.A. v. Energy Cap. Partners Mezzanine Opportunities Fund A, LP*, 2020 WL 5814233, at *5 (S.D.N.Y. Sept. 30, 2020).

Defendants' lead case—*Credit Suisse AG v. Appaloosa Inv. Ltd. P'ship I*, 2015 WL 5257003 (S.D.N.Y. Sept. 9, 2015)—provides no basis to depart from settled practice.  Judge Scheindlin addressed transfer before abstention only because "the arguments in favor of transfer [were] *unequivocal* and inform[ed] the discussion of why abstention is neither mandated nor appropriate." *Id.* at *8 n.73 (emphasis added).  In other words, the court addressed transfer only

4

after it had already firmly concluded that mandatory abstention did not apply. Here, by contrast, five of six mandatory abstention factors are undisputed, and Defendants are invoking only the sixth (timely adjudication) in a context where it holds little weight (*e.g.*, a Chapter 7 case rather than a Chapter 11 proceeding). Section 1334(c)(2) has therefore been placed squarely at issue and the remand-first rule is not merely preferred—it is compelled by the logic of the statute itself: if the statute requires this Court to abstain, there can be nothing to transfer.

Defendants misread *Smartmatic USA Corp. v. Dominion Voting Systems Corp.,* 2013 WL 5798986 (S.D.N.Y. Oct. 22, 2013), to the extent they argue it "decide[d] transfer motions before considering abstention" (Opp. at 8). *See Smartmatic*, 2013 WL 5798986, at *3 ("This Court agrees that it must decide Plaintiffs' motion to remand before deciding Defendants' motion to transfer venue or Defendants' motion to dismiss.") (citing *Bank of N.Y. v. Bank of Am.*, 861 F.Supp. 225, 227 (S.D.N.Y. 1994) ("Because the removal statute only allows removal of actions within the Court's original jurisdiction, and because fundamental principles of American jurisprudence forbid the Court from acting in the absence of subject matter jurisdiction, ... plaintiffs' [motion to remand] must be examined before any other matter."). And Defendants' out-of-circuit authorities—*George Junior Republic in Pa. v. Williams*, 2008 WL 763304 (E.D. Pa. Mar. 19, 2008), and *Hohl v. Bastian*, 279 B.R. 165 (W.D. Pa. 2002)—are Third Circuit "home court presumption" cases that do not reflect the settled practice in this District.[2] Rather, as the Second Circuit has explained, the abstention provisions "implicate the question whether [the court] *should* exercise jurisdiction, not whether the court *has* jurisdiction in the first instance." *In re S.G. Phillips Constructors, Inc.*, 45

---

[2] Similarly, Defendants cite *In re Tronox*, 603 B.R. 712 (Bankr. S.D.N.Y. 2019), *subsequently aff'd sub nom. In re Tronox Inc.*, 2022 WL 16753119 (2d Cir. 2022), as an example of "Bankruptcy courts in this district … receiv[ing] transferred cases … to decide remand and abstention" (Opp. at 8 n.6), but neglect to mention that the transferring court there was the District Court for Middle District of Pennsylvania, not any court from this district. *In re Tronox*, 603 B.R. at 718.

5

F.3d 702, 708 (2d Cir. 1995) (emphasis added).  A court that is statutorily required to decline jurisdiction over a case cannot transfer it to another forum for the exercise of that same jurisdiction.

## II.    MANDATORY ABSTENTION REQUIRES REMAND

All six prerequisites for mandatory abstention under 28 U.S.C. § 1334(c)(2) are satisfied. Defendants contest only one: whether this action can be "timely adjudicated" in state court.  That five factors are established is practically dispositive, given Defendants bear the burden of demonstrating that abstention is not warranted.  *Allstate Ins. Co. v. Ace Sec. Corp.*, 2011 WL 3628852, at *7-9 (S.D.N.Y. Aug. 17, 2011) (citing  *Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 582 (2d Cir. 2011)).  Defendants would not carry that burden even if they could prevail on the timeliness factor—which they cannot.

### A.    The *Parmalat* Factors Support Timely Adjudication in State Court

Under *Parmalat*, the timeliness inquiry considers four factors: (1) the relative backlog of the state and federal court calendars; (2) the complexity of the issues and the respective expertise of each forum; (3) the status of the related bankruptcy proceeding; and (4) whether state court adjudication would prolong administration of the estate.  639 F.3d at 580.  Every factor favors abstention.

1. The Proper Comparison Is Between the Commercial Division and This Court: *Parmalat* frames the first factor as "the backlog of the state court's calendar *relative to the federal court's calendar*."  639 F.3d at 580 (emphasis added).  The relevant "federal court" is this Court—not the Texas Bankruptcy Court—and Defendants cite no authorities to the contrary.  Defendants' comparison of Commercial Division docket statistics to the bankruptcy court's caseload (Opp. at 22) is therefore irrelevant.

2. Defendants' Docket Statistics Are Misleading: Even on their own terms, Defendants' statistics do not withstand scrutiny.  The average termination time for adversary proceedings in

the Bankruptcy Court—approximately nine months, per Defendants (Opp. at 22)—is heavily skewed by default judgments, consent orders, and summary dismissals bearing no resemblance to complex commercial litigations like this one. *See*, *e.g.*, Douglas G. Baird & Edward R. Morrison, *Adversary Proceedings in Bankruptcy: A Sideshow*, 79 Am. Bankr. L.J. 951, 959 (2005) (finding that the large majority of adversary proceedings involve "a very narrow range" of quickly resolved issues, such as voidable preferences and fraudulent transfer proceedings). A securitization dispute requiring interpretation of indentures and servicing agreements, deposition and document discovery to assess post-default trustee duties, and expert discovery for damages calculations across seven trusts is unlikely to be resolved in nine months in any court. The relevant inquiry under *Parmalat* is not the average termination time across all adversary proceeding types, but the expected timeline for the proceeding that is subject to remand request—here, a complex commercial dispute for which the New York Commercial Division's specialized infrastructure excels. Defendants have supplied no applicable timelines.

Further, the medium time to trial for an SDNY case is 1,104 days, whereas the median time to trial for a case in New York Supreme Court, Commercial Division is 1,163 days, Adams Dec. Ex. 1, Adams Dec. Ex. 2—a *de minimis* difference that would be further mooted by the New York-specific issues in this case, as explained below. This is far from the showing that Defendants must make—*i.e.*, that a New York state court adjudication could not be "timely."

3. The Complexity and Expertise Factor Strongly Favors the Commercial Division: *Parmalat* expressly recognizes that "where the legal issues in a case are especially complex, the forum with the most expertise in the relevant areas of law may well be expected to adjudicate the matter in a more timely fashion." 639 F.3d at 580. The claims here turn entirely on interpretation of New York-law-governed contracts and application of common law fiduciary duty principles—

quintessential Commercial Division territory. Defendants notably do not argue that the federal courts possess superior expertise in these areas. Rather, as the *Allstate* court observed, "[w]hile federal district courts naturally possess expertise in applying federal law, this advantage dissipates for cases alleging exclusively state claims." 2011 WL 3628852, at *10. The *Worldview* court reached the same conclusion, ordering mandatory abstention where the relevant claims "will turn on the meaning of the contracts and course of dealing between the parties and on questions of fiduciary duties under New York law," because "federal judges have no special expertise" over such claims. *Worldview Ent. Holdings Inc. v. Woodrow,* 611 B.R. 10, 19 (S.D.N.Y. 2019).

While Defendants contend (Opp. at 15, 23) that the Bankruptcy Court has already interpreted "some of the contractual provisions at issue" through the Vervent Interim Fee Order, that contention mischaracterizes the record. The Vervent Interim Fee Order resolved a narrow administrative question—whether Vervent should receive interim compensation while collateral mapping was pending—and expressly disclaimed any preclusive effect over this or any other non-bankruptcy matter and did not come close to even commenting on, much addressing, the claims at issue here. Order Granting Vervent, Inc.'s Motion to Establish Interim Procedures For Invoicing, Payment, and Reconciliation of Servicer Fees as to Certain Contested and Clean Accounts ¶ 12, *In re Tricolor Holdings, LLC et al*. (Bankr. N.D. Tex. Feb. 11, 2026) (Dkt. No. 785) (the "Vervent Interim Fee Order"). That the Bankruptcy Court may have some familiarity with an administrative fee dispute with no precedential value in this case has limited to no bearing on the timeliness inquiry. Likewise, Defendants cite three Texas decisions—*In re Harvest Sherwood Food Distribs., Inc.*, 2025 WL 3178864, at *13 (Bankr. N.D. Tex. Nov. 13, 2025); *In re Vantage Benefits Adm'rs, Inc.*, 2024 WL 3842796, at *25-26 (Bankr. N.D. Tex. Aug. 14, 2024); and *Truist Bank v. Nephserv, LLC*, 2021 WL 164444, at *5-6 (N.D. Tex. Jan. 13, 2021)—to argue that a Texas

bankruptcy court is "competent" to apply New York law.  Opp. at 15.  But competence is not the standard.  *Parmalat* asks which forum will adjudicate the matter more *timely*, and "where the legal issues in a case are especially complex, the forum with the most expertise in the relevant areas of law may well be expected to adjudicate the matter in a more timely fashion."  639 F.3d at 580.  The question is not whether the Bankruptcy Court *can* apply New York contract and fiduciary duty law, but whether the Commercial Division—which specializes in these issues—will do so more efficiently and accurately.

4. The Chapter 7 Context Diminishes The Importance of Timeliness: Defendants' precarious reliance on the timeliness factor is further undermined by the fact that the relevant bankruptcy here is a Chapter 7 action.  As *Parmalat* recognized, "courts have found that what might be timely in the Chapter 7 context is not necessarily timely in Chapter 11 cases where time is of the essence," because a Chapter 11 trustee may require expeditious resolution to fund a reorganization.  639 F.3d at 581.  In the Chapter 7 context however, the timeliness factor "can be weighed relatively lightly."  *Parmalat Cap. Fin. Ltd. v. Bank of Am. Corp.*, 671 F.3d 261, 268-69 (2d Cir. 2012).

Defendants attempt to dismiss this framework as "dicta," Opp. at 25, but it reflects the Second Circuit's own analytical methodology for the third *Parmalat* factor, applied consistently by courts in this District.  *See, e.g.*, *Worldview*, 611 B.R. at 20 (noting there was "little chance that the state court proceeding would prolong the administration or liquidation of the estate" where the Chapter 7 proceeding had recently begun); *In re Miami Metals I, Inc.*, 625 B.R. 593, 601 (Bankr. S.D.N.Y. 2021) ("In a Chapter 11 liquidation proceeding, like a Chapter 7 proceeding, timely adjudication can be weighed relatively lightly because there is no reorganization plan and less administrative urgency").  The Tricolor bankruptcy cases have no reorganization plan to facilitate,

no going-concern business to preserve, and no administrative urgency that state court resolution would compromise.  Defendants' attempt to treat a Chapter 7 liquidation with the urgency of a Chapter 11 reorganization is precisely the conflation that *Parmalat* warned against.

5.  State Court Adjudication Will Not Prolong Administration of the Estate:  Defendants argue that this case will be prolonged in New York state court given their asserted indemnification and contribution claims against the Tricolor estates.  Opp. at 23-24.  As already explained however, those claims are either unavailable or too insubstantial to bear the weight Defendants place on them.  *See* Dkt. No. 41 ("Mot.") at 15-16.  Contribution is barred for three of Plaintiffs' four causes of action because New York law does not permit contribution in defense of breach of contract claims.  *LNC Inv., Inc. v. First Fid. Bank, Nat. Ass'n*, 935 F. Supp. 1333, 1346 (S.D.N.Y. 1996) ("claims for contribution may not be brought in defense of a breach of contract claim" under New York law).  Any fiduciary duty contribution claim will not accrue until after liability is established.  *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 340 (2d Cir. 2018).  And, as Defendants concede, any contractual indemnification is subject to monetary caps and liability carve-outs.  Mot. at 15-16.

*In re Extended Stay Inc.* is directly on point.  There, as here, the claims were state-law claims between non-debtor parties, the debtors were not parties to the action, and the sole basis for "related to" jurisdiction was the defendants' potential indemnification claims against the debtor estates.  The court held that such claims did not prevent mandatory abstention and ordered remand. 435 B.R. 139, 150, 152 (S.D.N.Y. 2010).  Defendants' asserted "interconnectivity" (Opp. at 25) is precisely the attenuated nexus that *Extended Stay* rejected—potential effects on the estate through indemnification do not transform a state-law dispute between non-debtor parties into a bankruptcy matter.

10

Defendants' reliance on *In re Refco, Inc. Securities Litigation*, 628 F. Supp. 2d 432, 446 (S.D.N.Y. 2008), and *In re General Growth Properties, Inc.*, 460 B.R. 592, 602 (Bankr. S.D.N.Y. 2011), Opp. at 24, is misplaced. *Refco* involved a Chapter 11 bankruptcy with a confirmed plan in which defendants had filed a proof of claim for unpaid fees and sought to draw on the debtor's insurance policies for defense costs, respectively—direct, immediate entanglements with estate property bearing no resemblance to the speculative, capped, and largely legally-unavailable indemnification claims asserted here. *See* 628 F. Supp. 2d at 441. *General Growth Properties* involved a state court action that was actively interfering with distributions under a confirmed Chapter 11 plan, in violation of the confirmation order's injunction; any delay threatened concrete, imminent harm to waiting creditors. 460 B.R. at 602. Here, the Tricolor bankruptcy is an early-stage Chapter 7 liquidation. No plan has been (or will be) confirmed, no distributions are pending, and no administrative urgency requires that this action be resolved on any particular timeline.

**B.    Defendants' Cited Authorities Are Distinguishable**

Defendants are not helped by any of the cases they cite in arguing that mandatory abstention should not apply. Each instead demonstrates why the Court should abstain in this case. In *Krys v. Klejna*, 658 F. App'x 1 (2d Cir. 2016), for example, the district court granted remand of claims that it found to be "one piece of a much larger, extremely complex litigation puzzle," where many defendants had already been dismissed and the surviving claims "would need to be litigated from scratch" in state court. *Id*. at 3. Those circumstances could not be more dissimilar. Most of Plaintiffs' claims in this case involve discrete post-bankruptcy contractual breaches—failure to distribute Reserve Funds, payment of excessive Transition Costs, and failure to ensure interest payments—that are independent of the fraud investigation and that have not been commenced (let alone resolved) in any form or substance in the bankruptcy proceeding.

11

Defendants' other cases—*In re Refco*, *In re Global Crossing*, and *In re WorldCom*—likewise demonstrate why abstention and remand are appropriate here. Those cases involved massive multi-district securities fraud litigation with dozens of related actions, overlapping defendants closely connected to the debtor, and significant federal securities law claims. *See*, *e.g.*, *In re WorldCom, Inc. Sec. Litig.*, 293 B.R. 308, 331 (S.D.N.Y. 2003). This case bears none of those features. It concerns a single state court action with no directly overlapping federal litigation, no overlapping defendants, no securities claims, and no preexisting proceeding addressing even the narrow ownership issues that Defendants claim inextricably entangles this case with the bankruptcy.

\* \* \*

Every *Parmalat* factor supports timely adjudication in state court. Defendants fall far short of meeting their burden to show otherwise. Mandatory abstention compels remand.

## III.    PERMISSIVE ABSTENTION AND EQUITABLE REMAND INDEPENDENTLY SUPPORT REMAND

Even if mandatory abstention did not compel remand—and it does—this Court should independently exercise permissive abstention under 28 U.S.C. § 1334(c)(1) or equitable remand under 28 U.S.C. § 1452(b). Each applicable *Buechner* factor favors remand, and nothing in Defendants' opposition alters that conclusion.

Defendants invoke the "virtually unflagging obligation" of federal courts to exercise jurisdiction. Opp. at 26. But that principle applies to subject matter jurisdiction generally—not to the discretion of whether to exercise jurisdiction over non-core "related to" claims under §1334(c)(1). That statute instead vests the court with discretion to abstain "in the interest of justice,

12

or in the interest of comity with State courts or respect for State law." 28 U.S.C. § 1334(c)(1). It should exercise that discretion here.[3]

### A.    The Overlap Between This Action and the Bankruptcy Cases Is Overstated

Defendants' central theme is that this action is "inextricably tied" to the Bankruptcy Cases. Opp. at 1, 10-13. But none of their examples support that characterization. For example, the Vervent Interim Fee Order merely granted Vervent's *interim* compensation request while collateral mapping was pending—and expressly disclaimed preclusive effect over this litigation. Vervent Interim Fee Order ¶ 12. The Bankruptcy Court's own recognition that these disputes are separate refutes the claim of "inextricable" connection.

Defendants likewise overstate the importance of collateral tracing to Plaintiffs' claims. Three of Plaintiffs' four claims—the Reserve Fund distribution breach (Count II), the Transition Cost overcharges (Count III), and the fiduciary duty breach (Count IV)—rest on Defendants' failure to perform discrete contractual obligations that have no connection to any loan-by-loan

---

[3]    Defendants invoke *In re Tronox*, 603 B.R. 712 (Bankr. S.D.N.Y. 2019), *subsequently aff'd sub nom. In re Tronox Inc.*, 2022 WL 16753119 (2d Cir. 2022), as the governing standard for permissive abstention, *see* Opp. at 26, but *Tronox* does not compel a different result. The *Buechner* factors that structure this Court's analysis are "essentially identical" across the § 1334(c)(1) and § 1452(b) frameworks. *Kerusa Co. LLC v. W10Z/515 Real Est. Ltd. P'ship*, 2004 WL 1048239, at *3 (S.D.N.Y. May 7, 2004); *cf. Buechner v. Avery*, 2005 WL 3789110, at *5 (S.D.N.Y. July 8, 2005) (citing *Kerusa*, 2004 WL 1048239, at *3-9, for the factors governing permissive abstention). More fundamentally, *Tronox* involved a legal malpractice claim against the law firm that had represented the plaintiff in the *Tronox* bankruptcy. The defendant law firm removed the case and it was transferred by the Pennsylvania district court to the SDNY bankruptcy court where the related Chapter 11 case had been resolved by settlement, the action with respect to which the plaintiff asserted that the law firm had a disabling conflict of interest. 603 B.R. at 714-18. The bankruptcy court therefore had not only deep familiarity with the events giving rise to the claims at issue, but also "a strong and overwhelming interest in adjudicating the claims" since "resolution of the claims necessarily depend[ed] not only on an interpretation of this Court's prior orders and rulings in a complicated and protracted bankruptcy process, but also a determination of what would and would not have been permissible (from a bankruptcy perspective) in the treatment of competing creditors' claims" to determine whether legal malpractice had occurred. *Id.* at 726-27. Thus, every factor the *Tronox* court weighed turned on the factual overlap between the plaintiff's claims and the previously-resolved reorganization, circumstances that are absent here.

inquiries. Compl. ¶¶ 96-119. Only Plaintiffs' first claim (Count I) involves the Tricolor fraud, and its central inquiry will be whether Wilmington performed its contractual duty to verify Receivables Files—not to whom the associated receivables ultimately should belong. Compl. ¶¶ 59-60, 84-95.

The Chapter 7 adversary proceeding likewise does not create the overlap that Defendants allege. That proceeding alleges fraud by Tricolor insiders. This action alleges that Wilmington and Vervent failed to perform *their own* contractual duties. *Ritchie Capital Management, L.L.C. v. JPMorgan Chase & Co.*, 532 B.R. 461 (S.D.N.Y. 2014), is inapposite: the bank in *Ritchie Capital* was alleged to have participated in the debtor's Ponzi scheme. *Id.* at 469-70. While Defendant Wilmington Trust is alleged to have failed to perform contractual obligations that should have prevented Tricolor's fraud, it is not alleged to have participated in it. Compl. ¶¶ 59-65 (alleging that "Wilmington should have uncovered that Tricolor double-pledged those receivables or fabricated them from fictitious borrowers" and that, rather than doing so, Wilmington "certified receipt of original documentation for thousands of loans across the seven Tricolor Trusts without adequately verifying delivery of those documents."). For similar reasons, Defendants' reliance on *CCM Pathfinder Pompano Bay, LLC v. Compass Financial Partners LLC*, 396 B.R. 602 (S.D.N.Y. 2008), is misplaced. There, the relief sought directly conflicted with post-confirmation orders protecting the loan servicer's rights. *Id.* at 606. Here, none of Plaintiffs' claims conflicts with any order entered in the Bankruptcy Cases—indeed, the Vervent Interim Fee Order expressly disclaims preclusive effect over this litigation. Vervent Interim Fee Order ¶¶ 9, 12.

Defendants also repeatedly characterize Plaintiffs' participation in the Bankruptcy Cases—largely confined to objecting to the Vervent Interim Fee Motion—as a "submission" to the

14

Bankruptcy Court's jurisdiction that now forecloses remand.   Opp. at 5, 12-13.   That characterization is wrong.   Creditors who actively protect their interests in a bankruptcy proceeding do not thereby waive the right to prosecute independent state law claims in their chosen forum.  The Vervent Interim Fee Order itself recognized this distinction by expressly disclaiming preclusive effect over non-bankruptcy litigation.   Vervent Interim Fee Order ¶ 12. Plaintiffs' participation in the Bankruptcy Cases reflects responsible stewardship of their investment in that forum; it does not constitute an election to litigate their contract claims there.

### B.      Remand Will Not Impede Efficient Administration of the Estates

The Tricolor bankruptcy is a Chapter 7 liquidation—there is no reorganization proceeding requiring expedited resolution.  Notably, the Chapter 7 Trustee herself—though certainly aware of this lawsuit—has not suggested it impacts the administration of the estates.

As *Buechner* itself observed, "[t]here is no Chapter 11 proceeding pending."  2005 WL 3789110, at *5.  Defendants cannot identify a concrete administrative efficiency that would result from federal retention of this case.  *Buechner* expressly held that "[a] potential indemnification claim against the bankrupt estate of one defendant is a factor that weighs somewhat against abstention, but is not alone a ground for avoiding an equitable remand."  *Id*. at *6.  And *Extended Stay* reached the same conclusion.  435 B.R. at 150, 152.

### C.      The Remaining *Buechner* Factors Confirm That Remand Is Appropriate

Defendants fare no better on the remaining *Buechner* factors: state law issues predominate; the applicable law is well-established and the Commercial Division possesses unmatched expertise in it, *see Worldview*, 611 B.R. at 19, and comity demands that this New York law dispute be resolved by New York courts.  *See Buechner*, 2005 WL 3789110, at *6*; In re Bradlees, Inc.*, 2005 WL 106794, at *8 (S.D.N.Y. Jan. 19, 2005) ("forum shopping should not be rewarded").  Plaintiffs will suffer concrete prejudice if denied their chosen forum—a forum to which Defendants

15

contractually submitted. And judicial economy favors remand: there is no pending action in this District with which these claims could be consolidated. Defendants' cursory treatment of these factors—largely confined to cross-references to their transfer arguments, Opp. at 26-27—underscores that the *Buechner* analysis favors Plaintiffs.

Defendants argue that *Buechner* is distinguishable because the Chapter 7 cases there were closed. Opp. at 27. But *Buechner*'s core holding—that potential indemnification claims are insufficient to defeat equitable remand—applies regardless of whether the bankruptcy remains open. Defendants' observation that *Worldview*'s state action predated the Chapter 7 filing similarly does not undermine that court's conclusion that "federal judges have no special expertise" over New York contract and fiduciary duty claims. 611 B.R. at 19. And Defendants' observation that *Bradlees* addressed mandatory rather than permissive abstention misses the point: the court's admonition that "forum shopping should not be rewarded," 2005 WL 106794, at *8, applies with equal force to the comity analysis under *Buechner*.

Defendants' citation of *Winstar Holdings, LLC v. Blackstone Group L.P.*, 2007 WL 4323003 (S.D.N.Y. Dec. 10, 2007), is equally unavailing. In *Winstar*, the claims arose directly from a Bankruptcy Court-approved asset sale, required interpretation of a Bankruptcy Court-approved asset purchase agreement, and—critically—the plaintiffs themselves had stipulated to exclusive jurisdiction in the Bankruptcy Court. *Id.* at *5. No comparable facts exist here.

## IV.    DEFENDANTS' CROSS-MOTION TO TRANSFER SHOULD BE DENIED

Even if the Court denies remand (and it should not), transfer to the Northern District of Texas is unwarranted given Defendants agreed to forum selection clauses that bar transfer, and because the Section 1404(a) factors do not support it.

### A.    The Forum Selection Clauses Bar Transfer

Defendants seek to reduce the Indenture's forum selection clause to covering "at most a single claim against a single Defendant." Opp. at 17-18. That characterization is incorrect.[4] The Indentures' forum selection clauses cover, at minimum, two of Plaintiffs' four counts. Count II alleges that Wilmington breached Section 2.08 of the Indenture by failing to ensure interest payments. Compl. ¶¶ 96-107. Count IV alleges that Wilmington breached fiduciary duties imposed by and arising from the Indenture. Compl. ¶¶ 50-51, 113-119. Both claims are "instituted hereunder" within the meaning of the Indentures' Section 11.11. *See* Indenture[5] Ex. A at A-9 (stating that the "obligations, rights and remedies of the parties" to each Note and to the Indenture are governed by New York law); *RJ Cap., S.A. v. Lexington Cap. Funding III, Ltd.*, 2013 WL 1294515, at *8-9 (S.D.N.Y. Mar. 30, 2013) (analyzing indenture trustee's obligations to make principal payments as breach of indenture, despite the existence of related agreements); *FMS Bonds, Inc. v. Bank of New York Mellon*, 2016 WL 4059155, at *14 (S.D.N.Y. July 28, 2016) ("the indenture trustee's fiduciary duties arise from the fact that it is indenture trustee under the

---

[4]   As explained below, Defendants are also incorrect to assert that Plaintiffs cannot invoke the Sale and Servicing Agreements (Opp. at 16-17). They can, and the Sale and Servicing Agreements' identical forum selection clauses—which apply at minimum to Plaintiffs' Counts I and III—likewise bar both Defendants' attempts to remove and to transfer. *See* Mot. § III; *infra* § V.

[5]   A copy of an Indenture was attached to the Complaint as Ex. 3. ECF No. 1-1. Defendants argue that Count II's Indenture claim is "dependent on predicate breaches of the SSAs" and thus should not be treated as an Indenture claim. Opp. at 17-18. That argument confuses the legal basis for Plaintiffs' claim with one of its factual predicates. Even if the *facts* giving rise to Wilmington's liability under Section 2.08 include the Servicer's noncompliance with Sale and Servicing Agreement ("SSA") provisions, Plaintiffs' *claim* seeks to enforce *a right created by* the Indenture—specifically, the Section 2.08 obligation to distribute payments. Defendants' invocation of *Armco Inc. v. N. Atl. Ins. Co.*, 68 F. Supp. 2d 330, 338-40 (S.D.N.Y. 1999), and *Sempra Energy Trading Corp. v. Algoma Steel, Inc.*, 2001 WL 282684, at *6-7 (S.D.N.Y. Mar. 22, 2001), *aff'd*, 300 F.3d 242 (2d Cir. 2002), Opp. at 18, fares no better. Both involved forum selection clauses in contracts that were incidental to the parties' primary dispute. Here, the Indentures are the opposite of incidental: they are the foundational document for multiple claims.

indenture[22]).    And Plaintiffs as noteholders are direct beneficiaries of the Indenture, which establishes a trust structure under which Wilmington holds assets "in trust . . . for the benefit of the Noteholders."  Compl. ¶ 50 (citing Indenture, Granting Clause).

As to the Plaintiffs' remaining claims (Counts I and III): even if the Indentures' forum selection clauses do not independently cover them (and even if they were not covered by the Sale and Servicing Agreements' identical clauses, which they are (*see infra* § V))—the fact that a valid forum selection clause covers some claims "can weigh strongly in favor of" retaining the entire action, "especially where all of the claims are factually interrelated."  *Lavazza Premium Coffees Corp. v. Prime Line Distribs. Inc.*, 575 F. Supp. 3d 445, 466-67 (S.D.N.Y. 2021) (citing *Androb Jewelry Serv., Inc. v. Malca-Amit USA, LLC*, 2017 WL 4712422, at *3 (S.D.N.Y. Sept. 25, 2017) (holding all claims should be heard in same court, despite only half being governed by a forum selection clause, because the remainder were factually related)).  Here, all four counts arise from the same securitization transactions, involve the same trust structure, and are against the same contractual counterparty defendants.  Splitting the action because only two of Plaintiffs' four claims are governed by a forum selection clause would undermine the very efficiency Defendants invoke.[6]

Defendants fare no better in citing *Appaloosa*.  Opp. at 8, 10, 18-19.  There, the court overrode a forum selection clause because of a "palpable conflict" between the pending action and

---

[6]  Defendants cite *Anselmo v. Univision Station Grp., Inc.*, 1993 WL 17173 (S.D.N.Y. Jan. 15, 1993), for the proposition that courts have "refused to honor" forum selection clauses that are "insignificant to the main claim."  Opp. at 18.  But *Anselmo* supports Plaintiffs' position: it held that where "all the parties are bound by the forum selection clause for one of the plaintiff's main claims" and the remaining claims "merely provide alternative theories," the clause should be honored for the entire action.  1993 WL 17173, at *4.  The same logic applies here: the Indenture is not peripheral to this dispute—it is the foundational document creating the trust structure, Wilmington's fiduciary duties, and several of Plaintiffs' rights.

the bankruptcy: plaintiff sought to enjoin defendants from challenging estate property and thereby undercutting the plan confirmation process. 2015 WL 5257003, at *8-11. No comparable conflict exists here nor have Defendants alleged such a conflict. Plaintiffs seek damages against non-debtor counterparties for independent contractual and fiduciary breaches that do not implicate any plan or estate administration. *E.g.*, Compl. ¶ 82-83 ("Due to Defendants' breaches, Plaintiffs are no longer receiving any interest payments on their subordinated Notes. . . . The governing agreements layer in multiple protections against an interest-payment Event of Default for exactly this reason. Subordinated Noteholders, including Plaintiffs, relied on these protections when they invested in the Tricolor Trusts, and have now been denied the benefit of their bargain due to Defendants' willful breach of duty."). Indeed, the Bankruptcy Court removed any doubt as to whether a "palpable conflict" could arise in this case when it decided the Vervent Interim Fee Motion; it there anticipated that other, non-bankruptcy court proceedings concerning collateral ownership would arise and confirmed that its order would have no preclusive effect on them. Vervent Interim Fee Order, ¶ 12.

*Deutsche Oel* is equally inapposite: the claims there were found to be "core" proceedings, 2020 WL 5814233, at *13—a determination that cannot be made here given Defendants have already conceded that the claims are non-core. Notice (Dkt. No. 1) ¶ 43. The remaining cases Defendants invoke for the proposition that courts "routinely override" forum selection clauses in favor of bankruptcy court adjudication—*Argosy Capital Group III, L.P. v. Triangle Capital Corp.*, 2019 WL 140730, at *8 (S.D.N.Y. Jan. 9, 2019); and *U.S. Security Holdings, Inc. v. Andrews*, 2021 WL 796687, at *8-9 (S.D.N.Y. Mar. 2, 2021), Opp. at 19—each involved core or "strong[ly]" related proceedings or claims that directly implicated administration of an active bankruptcy estate. *U.S. Security Holdings* turned on near-identical claims already pending in the transferee court—a

19

consolidation opportunity entirely absent here.  *See* 2021 WL 796687, at *9 ("[t]he two cases allege[d] the same wrongful use of the ANDREWS name in connection with a new security business in California.").  None of these cases involved the consent-to-relief language present in the forum selection clauses, and none involved a non-core state-law dispute between non-debtor parties with New York forum selection.

**B.       The Section 1404(a) Factors Do Not Support Transfer**

1.   Transfer To A Court That Cannot Enter Final Judgment Would Defeat Judicial Economy: Defendants concede a threshold deficiency in their transfer argument: Plaintiffs' claims are "non-core," and Defendants "do not consent to the entry of final orders or judgments by a bankruptcy judge."  Notice ¶ 43.  Under 28 U.S.C. § 157(c)(1), the Bankruptcy Court could therefore only "hear" the proceeding and "submit proposed findings of fact and conclusions of law to the district court" for de novo review.  Transfer would thus produce the precise outcome that Section 1404(a) is designed to prevent: advisory proceedings in a court lacking adjudicatory authority, followed by de novo review in a Texas district court with no familiarity with the case. Defendants' transfer request will therefore not achieve any efficiency; it will result in the opposite.

Defendants' threshold argument—that this action "might have been brought" in the Northern District of Texas under 28 U.S.C. § 1409(a), Opp. at 10—likewise fails. Section 1409(a) permits a "related to" proceeding to be commenced in the district where the bankruptcy is pending, but that provision presupposes that federal jurisdiction over the action has been established and *maintained*.  If this Court grants the remand motion (as it should) then there is nothing to transfer: a mandatory abstention remand eliminates the anchor on which § 1409(a) depends.  *See Goldman v. Grand Living II, LLC*, 2021 WL 4033277, at *6 n.5 (E.D.N.Y. Sept. 3, 2021) ("Since abstention is mandatory, any motion to transfer would necessarily fail because the action could not have initially been brought in the transferee court.") (internal citation omitted).  Defendants' cited

authorities—*Appaloosa*, *Ritchie*, and *Bank of America v. Wilmington Trust*—each involved undisputed, permanent federal jurisdiction with no statutory command to abstain, and are therefore inapposite.

2. Convenience Factors Do Not Favor Texas: Plaintiffs' claims turn on New York-law-governed contracts and Defendants' performance of fiduciary duties with no connection to Texas law, and the Indentures and Sale and Servicing Agreements are in the parties' possession regardless of forum. Defendants emphasize that certain Tricolor insiders are located in Texas (Opp. at 13-14) but the most important witnesses for Plaintiffs' claims are employees of Wilmington Trust, who are not located in Texas. The existence of the fraud—including the double-pledging of loans to multiple parties and the delivery of fictitious loans backed by cars that do not exist—is not disputed. Plaintiffs' custodian claims—the only ones with any overlap to the bankruptcy proceeding—will turn on whether and to what extent Wilmington Trust performed its obligations as Custodian to ensure delivery of the collateral files for those double-pledged and fictitious loans. Evidence from Tricolor witnesses will be secondary, at best, in establishing Wilmington Trust's failure to perform these obligations.

Defendants argue that Plaintiffs' forum choice deserves reduced deference (Opp. at 15-16), but Plaintiffs filed in a contractually-designated forum; this is not forum shopping—it is compliance with a bargained-for obligation. *See ICICI Bank Ltd. v. Essar Glob. Fund Ltd.*, 565 B.R. 241, 256 (S.D.N.Y. 2017) (it is Defendants' burden to show that "this is the 'exceptional case' where public interest factors will override a valid and enforceable forum-selection clause") (citing *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 59-60 (2013) ("a proper application of § 1404(a) requires that a forum-selection clause be given controlling weight in all but the most exceptional cases.") (internal citation omitted)); *Aguas Lenders Recovery*

21

*Grp. v. Suez, S.A.*, 585 F.3d 696, 700 (2d Cir. 2009) (mandatory forum selection clauses are "entitled to a presumption of enforceability") (citing *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 15 (1972)).  Defendants' contention that Plaintiffs should have filed this case anywhere other than the contractual defined forum is specious.

## V.    DEFENDANTS HAVE WAIVED THEIR RIGHT TO REMOVE

A third, independent basis for remand exists: Defendants contractually waived their right to remove.  Section 11.11 of each Indenture and Section 9.12 of each Sale and Servicing Agreement provide, in relevant part:

> EACH OF THE PARTIES HERETO HEREBY AGREES TO THE NON-EXCLUSIVE JURISDICTION OF THE COURTS OF THE STATE OF NEW YORK, LOCATED IN THE BOROUGH OF MANHATTAN, AND THE FEDERAL COURTS LOCATED WITHIN THE STATE OF NEW YORK IN THE BOROUGH OF MANHATTAN.  EACH OF THE PARTIES HERETO HEREBY WAIVES ANY OBJECTION BASED ON FORUM NON CONVENIENS, AND ANY OBJECTION TO VENUE OF ANY ACTION INSTITUTED HEREUNDER IN ANY OF THE AFOREMENTIONED COURTS AND CONSENTS TO THE GRANTING OF SUCH LEGAL OR EQUITABLE RELIEF AS IS DEEMED APPROPRIATE BY SUCH COURT.

Indenture § 11.11; Sale and Servicing Agreement § 9.12.  The "Consent to Relief" language in this clause distinguishes this case from those that Defendants cite.[7]

Defendants' contention (Opp. at 16-17) that Plaintiffs cannot enforce the Sale and Servicing Agreements—and therefore cannot invoke their forum selection clauses—rests on a misreading of both the agreements and the applicable law. Section 9.08 bars third-party enforcement only "[e]xcept as otherwise provided in this Agreement," Sale and Servicing Agreement § 9.08, and the agreements "otherwise provide[]" extensive rights to Noteholders,

---

[7]    Defendants rely on *Ixe Banco v. MBNA America Bank*, 2007 WL 9813416 (S.D.N.Y. Apr. 26, 2007), *Congress Financial Corp. v. Bortnick*, 2000 WL 1634248 (S.D.N.Y. Oct. 31, 2000), and *Wexler v. Allegion (UK) Ltd.*, 2016 WL 6662267 (S.D.N.Y. Nov. 9, 2016), Opp. at 19-21, but each is inapposite because none involved the "consent to the granting of . . . relief" language present here.

including the rights to direct servicer termination (§ 7.01), to appoint successor servicers (§ 7.02), to terminate the Custodian (§ 2.10), to waive servicer termination events (§ 7.05), and to prompt written notice of a Servicer Termination Event or to any termination of, or any appointment of a successor to, the Servicer (§ 7.04).  Further, Noteholder consent is required to amend the Sale and Servicing Agreements (§ 9.01(b)).  Defendants' own brief acknowledges such rights, *see* Opp. at 4 n.4, and Defendants' reading of Section 9.08 would render every one of those provisions surplusage, a result New York law forbids.  *See India.com, Inc. v. Dalal*, 412 F.3d 315, 323 (2d Cir. 2005) ("under New York law, effect and meaning must be given to every term of the contract") (internal citations omitted).  Moreover, the *India.com* line of cases—which addressed a broker's attempt to claim a commission as a third-party beneficiary of a stock purchase agreement that explicitly negated third-party beneficiary obligations—has no application here.  Plaintiffs are the investors who purchased the Notes that the Sale and Servicing Agreements' custodial and distribution provisions were designed entirely to protect and repay, making them intended—not merely incidental—beneficiaries.  *See id.* at 321 ("it is old law that a third party may sue as a beneficiary on a contract made for his benefit").  As for the "closely related" test that Defendants invoke (Opp. at 16-17), that doctrine governs whether a non-signatory may enforce a forum selection clause, not whether an intended beneficiary may bring a substantive breach of contract claim.  Regardless, even on its own terms, the test is satisfied because Plaintiffs are the economic principals for whose benefit Wilmington undertook its custodial duties "on behalf of the Issuer and the Indenture Trustee as pledgee of the Receivables," SSA § 2.06(c); whose consent is required for every material SSA action; and without whom the transaction would have had no purpose.

The forum selection clauses of both the Indentures and the Sale and Servicing Agreements therefore apply, and under the *Pullman* framework, they bar removal because they contain

"specific language of exclusion" and leave control "in one party with power to force on its own terms the appropriate forum." *City of New York v. Pullman, Inc.*, 477 F. Supp. 438, 442 n.11 (S.D.N.Y. 1979); *cf. ICICI Bank*, 565 B.R. at 253 (a forum selection clause in which the parties contract away their rights to challenge the venue chosen by plaintiffs is mandatory, most clearly so once "Plaintiff file[s] suit in one of the designated fora.").

Defendants' rely upon *Ixe Banco*, *Congress Financial*, and *Wexler* (Opp. at 20-21), but those cases contained only venue and forum non conveniens waivers—not consent-to-relief language. Each decision found neither *Pullman* element satisfied. The clauses here are materially different: each party has consented to "the granting of such legal or equitable relief as is deemed appropriate by such court." Indenture § 11.11; Sale and Servicing Agreement § 9.12. When Plaintiffs filed in New York Supreme Court, Defendants consented not merely to that court's jurisdiction but to its granting of relief. A party that has expressly provided advance consent to the granting of relief by a designated court cannot later remove the action to a different one.[8]

Cases finding removal waiver confirm this reading. In *Lancer Insurance Co. v. MKBS, LLC*, the court granted remand where the parties had waived venue objections and consented to the chosen court's authority. 2008 WL 5411090, at *1-3 (E.D.N.Y. Dec. 22, 2008) (finding the forum selection clause at issue prohibited "either party from objecting to the 'laying of venue of any such suit' once an action is "brought in any [court designated by the forum selection clause]").[9]

---

[8] Defendants' reliance on *Yakin v. Tyler Hill Corp.*, 566 F.3d 72 (2d Cir. 2009) (Opp. at 20) is misplaced. *Yakin* held that a forum selection clause "waives a statutory right to remove" when it "binds diverse parties by its express terms to a specific jurisdiction that is not federal." *Id.* at 76. That is precisely what the consent-to-relief clause accomplishes here: once Plaintiffs selected New York Supreme Court, Defendants were bound to accept the granting of relief by that court—a "specific jurisdiction that is not federal."

[9] Defendants dismiss *Lancer* as "contrary to the weight of the authority in this Circuit," Opp. at 21, citing *Wexler*, 2016 WL 6662267, at *2 n.3, but *Lancer*'s reasoning—that a clause prohibiting either party from objecting to venue once suit is brought in a designated forum will effectively

In *Koninklijke Philips Electronics v. Digital Works, Inc.*, the court granted remand where the plaintiff had "sole discretion" to select the forum. 358 F. Supp. 2d 328, 330-31 (S.D.N.Y. 2005). In *Bankers Healthcare Group, LLC v. Goldsol, Inc.*, the court found removal waived where the clauses contained "exclusionary and obligatory language." 2024 WL 3451037, at *3-5 (N.D.N.Y. July 18, 2024) (finding defendant was precluded from seeking removal after agreeing to waive right to "transfer or change the venue of any litigation"); *cf.* Indenture § 11.11; Sale and Servicing Agreement § 9.12 (Defendants "WAIVE[D] ANY OBJECTION TO VENUE OF ANY ACTION" and "CONSENT[ED] TO THE GRANTING OF … RELIEF AS IS DEEMED APPROPRIATE BY [NEW YORK] COURT").

Defendants cite *Von Graffenreid v. Craig*, 246 F. Supp. 2d 553 (N.D. Tex. 2003), but it provides no shelter. It was decided under Fifth Circuit law applying a different analytical framework; addressed a motion to dismiss for improper venue rather than removal waiver; and did not address the interaction between consent-to-relief language and a venue waiver in the removal context. *See id*. at 557, 561, 564. None of those features is present in this case. And, importantly, the *Von Graffenreid* court found the forum selection clause permissive because "nothing preclude[d] [the parties] from initiating litigation elsewhere," even though the plaintiff had already initiated litigation in the designated forum. In contrast, the court in *ICICI Bank* (in this District) came to the opposite conclusion in circumstances materially identical to present; it found a forum selection clause granting non-exclusive jurisdiction "became mandatory once Plaintiff had filed suit in one of the designated fora." 565 B.R. at 246, 253.

---

bind the non-filing party to that forum—is fully consistent with the *Pullman* framework and with the result here. And, accordingly, it has been cited approvingly by courts in this District to grant remand. *See, e.g.*, *110 Voice Rd., LLC v. Quincy Compressor LLC*, 2020 WL 8922855, at *1-2 (E.D.N.Y. Mar. 4, 2020).

The forum selection clauses at issue in this case operate through three reinforcing components: (1) the parties agree to the non-exclusive jurisdiction of the designated courts; (2) they waive any objection to venue in those courts; and (3) they consent to the granting of relief by whichever designated court the filing party selects. Read together, these provisions commit each party to accept the adjudicatory authority of the forum the other party chooses—precisely the second *Pullman* element. *Pullman*, 477 F. Supp. at 442 n.11 (a forum selection clause excludes jurisdiction in non-designated fora when it "leaves it in the control of one party with power to force on its own terms the appropriate forum").

Defendants' remaining arguments do not disturb this analysis. In *Rabbi Jacob Joseph School*, Opp. at 19, the clause used permissive "may be heard" language, but lacked the consent-to-relief provision contained in both the Indentures and Sale and Servicing Agreements. *Rabbi Jacob Joseph School v. Province of Mendoza*, 342 F. Supp. 2d 124, 128 (E.D.N.Y. 2004). Similarly, in *Reijtenbagh*, Opp. at 19, the defendant merely "irrevocably submit[ted] to the jurisdiction" without consenting to the granting of relief, which is not the same. *JP Morgan Chase Bank, N.A. v. Reijtenbagh*, 611 F. Supp. 2d 389, 390-91 (S.D.N.Y. 2009). Finally, all *Martinez* enforceability factors are satisfied here: the clauses were communicated to Defendants as signatories; they contain obligatory language; and this action arises under the relevant agreements. *Martinez v. Bloomberg LP*, 740 F.3d 211, 217 (2d Cir. 2014); *see also M/S Bremen*, 407 U.S. at 10. The clauses—and Plaintiffs' selection of New York state court to grant relief on their claims—are therefore binding on Defendants.

## CONCLUSION

For the foregoing reasons, and those set forth in Plaintiffs' opening motion, Plaintiffs respectfully request that this Court: (1) grant Plaintiffs' Motion to Remand this action to the New York Supreme Court, Commercial Division, on the basis of mandatory abstention, permissive

26

abstention, equitable remand, and Defendants' contractual waiver of the right to remove; (2) deny

Defendants' Cross-Motion to Transfer; and (3) reserve Plaintiffs' right to seek attorneys' fees and

costs incurred in connection with the removal under 28 U.S.C. § 1447(c).

Respectfully submitted,

**QUINN EMANUEL URQUHART<br>& SULLIVAN, LLP**

Dated: April 6, 2026
      New York, New York    By:    /s/ *Blair A. Adams*

          Blair A. Adams
          Toby E. Futter
          295 Fifth Avenue
          New York, New York 10016
          Telephone: (212) 849-7000
          Email: blairadams@quinnemanuel.com
                    tobyfutter@quinnemanuel.com

          *Attorneys for Plaintiffs*

<u>**CERTIFICATE OF WORD COUNT COMPLIANCE**</u>

I, Blair A. Adams, an attorney duly admitted to practice before this Court, hereby certify

pursuant to Local Civil Rule 7.1(c) that foregoing Memorandum of Law was prepared using

Microsoft Word and the document contains 8,666 words as calculated by the application's word-

counting function, excluding the parts of the Memorandum of Law exempted by Local Civil Rule

7.1(c).

I certify under the penalty of perjury the forgoing statements are true and correct.  Executed

on this 6th day of April, 2026 in New York, New York.

          /s/ *Blair A. Adams*
          *Blair A. Adams*