UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
                                                            :
ONE WILLIAM STREET CAPITAL MASTER        :
FUND LTD., OWS ABS MASTER FUND, LTD.,     :
et al.,                                                     :
                                                            :          26-CV-01123 (JAV)
                              Plaintiffs,         :
                                                            :          OPINION AND ORDER
            -v-                                        :
                                                            :
WILMINGTON TRUST, NATIONAL           :
ASSOCIATION and VERVENT INC.,            :
                                                            :
                              Defendants.        :
                                                            :
--------------------------------------------------------------------X

JEANNETTE A. VARGAS, United States District Judge:

On February 10, 2026, Defendants removed this action from the Supreme

Court of the State of New York, County of New York ("Commercial Division"), to

federal court pursuant to the statute governing removal of bankruptcy-related

proceedings, 28 U.S.C. § 1452.  Defendants assert that this action is related to

jointly-administered Chapter 7 proceedings pending in the United States

Bankruptcy Court for the Northern District of Texas (the "Bankruptcy Court"), *In re*

*Tricolor Holdings, LLC, et al.*, Case No. 25-33487 (MVL) (collectively, the

"Bankruptcy Cases").  ECF No. 1 ("Not. of Removal") at 1-3.

Plaintiffs now seek to remand this action to the Commercial Division.  ECF

No. 40.  In turn, Defendants have cross-moved to transfer the action to the

Bankruptcy Court pursuant to 28 U.S.C. § 1404.  ECF No. 42.  Plaintiff's motion to

remand this matter to state court is **GRANTED** and Defendant's cross-motion to transfer is **DENIED.**

## BACKGROUND

### I.    Tricolor's Liquidity Scheme

The following allegations are accepted as true for purpose of this motion. Tricolor Holdings, LLC was a vertically integrated chain of "buy here, pay here" used car dealerships in Texas, Arizona, and California.  ECF No. 1-2 ("Compl."), ¶ 44.  A "buy here, pay here" used car dealer offers used vehicles and originates subprime loans to finance those vehicles, primarily for high-risk borrowers with poor or no credit.  *Id.*  Tricolor used several special purpose, bankruptcy-remote entities ("SPVs") to borrow funds from warehouse lenders, which gave Tricolor the liquidity needed to originate the auto loans.  *Id.,* ¶ 45.  Tricolor would send its auto receivables to the SPVs, who used those receivables as collateral for new warehouse loans.  *Id.*  Defendant Wilmington Trust National Association ("Wilmington") was the custodian of the auto loans originated by Tricolor.  *Id.,* ¶ 46. In this role, Wilmington was to ensure that the physical file for each loan included a true copy of the loan contract and the title of the vehicle securing the contract.  *Id.*

To gain more liquidity, Tricolor began to securitize its auto loan receivables. *Id.,* ¶ 48.  Tricolor's SPVs pooled the auto receivables together and bundled them into large, income-generating assets with predictable cash flows.  *Id.*  These bundled receivables were then sold to separate Tricolor entities (the "Tricolor Trusts") who issued notes backed by the underlying receivables.  *Id.,* ¶¶ 49-50.  The noteholders

would then receive a portion of the proceeds generated by the auto receivables in accordance with the class they purchased. *Id., ¶* 50. Specifically, the available funds were first intended to pay interest to each note class in order of priority; accrued interest across all classes was to be paid in full before the seniormost class's principal is paid. *Id., ¶* 52. In the event of a default on monthly interest payments, however, the seniormost tranche jumps in priority and their principal is due in full, cutting off the subordinate tranches. *Id., ¶* 53. To avoid this scenario, each of the Tricolor Trusts had a cash reserve fund to cover shortfalls, in case collateral cash flows cannot cover the noteholders' monthly interest. *Id., ¶¶* 53-54. This would protect the noteholders from temporary shortfalls, ensuring that only "substantial disruptions" create an interest default. *Id.*

The Tricolor Trusts used the proceeds from these notes to purchase more auto loan receivables, creating the circular scheme. In total, Tricolor Trusts issued $1,816,960,000 of asset backed notes between 2022 and 2025. *Id., ¶* 58.

Defendant Wilmington, as Indenture Trustee of the Trusts, held the auto receivables and was responsible for ensuring that noteholders were paid. *Id.*, ¶ 59. As Custodian of both the Trusts and the underlying receivables, Wilmington was responsible for verifying that each receivable had a valid auto loan and title connected to it. *Id.* Wilmington would then issue a Custodian Certificate to the Trusts, assuring the noteholders that the collateral securing their note existed. *Id.* Tricolor Auto Acceptance, LLC was the primary servicer of loans originated by Tricolor. *Id.*, ¶ 56. The servicer's role is to administer and pursue repayment of the

loans monthly, as well as determine how much the Indenture Trustee should pay the noteholders based on their collections. *Id.* Defendant Vervent was the backup servicer of the auto loans and monitored the auto loan receivables in the event it needed to take over as servicer. *Id.*, ¶ 57.

Tricolor is alleged to have defrauded its creditors primarily by (1) double-pledging auto loan receivables to trusts and (2) completely fabricating auto loans to inflate its receivables. *Id.*, ¶ 62. Tricolor allegedly double-pledged 31,408 auto loan receivables, and as a result overrepresented its assets to lenders by over half a billion dollars. *Id.* Another $135 million of fictitious receivables were promised to the Tricolor Trusts, with backing loans made to nonexistent people, purchasing nonexistent vehicles. *Id.* When Tricolor's warehouse lenders discovered this scheme, they closed Tricolor's lines of credit in August 2025. *Id.*, ¶ 64. Since Tricolor's ability to pay its short-term obligations relied significantly on these ongoing lines of credit, Tricolor quickly collapsed. *Id.*

## II.      Plaintiffs' New York State Claims

Plaintiffs are among the subordinate noteholders who invested in the Tricolor Trusts. Compl., ¶ 9. Plaintiffs brought this action in New York state court on January 12, 2026, alleging claims for breach of contract and fiduciary duties. *Id.* at 1. Plaintiffs' first cause of action alleges that in its capacity as custodian, Wilmington's failure to detect the double-pledging and fraudulent loans within the

securitization contracts caused a significant loss of value in the Tricolor Trust notes. *Id.*, ¶¶ 92-95.

The second cause of action asserts that Defendants have together breached their duties as Indenture Trustee and Servicer under the Securitization Contracts and Sale and Servicing Agreements. *Id.*, ¶¶ 106-107. Specifically, Vervent was responsible as successor servicer for calculating monthly distributions to noteholders as well as "the Reserve Fund Draw Amount," in the event of shortfalls or bankruptcy. *Id.* By extension, Wilmington breached its duty to noteholders by failing to withdraw from the Reserve Fund and maintain regular interest payments, causing the notes to enter an interest-payment default. *Id.* This interest-payment default triggered a change in payment priority which they allege has adversely affected subordinate noteholders. *Id.*

Plaintiffs' third cause of action alleges that Wilmington has unlawfully paid Vervent transition costs in breach of the Securitization Contracts. *Id.,* ¶¶ 108-112. Finally, Plaintiffs argue that Wilmington's actions pre- and post-bankruptcy constitute a breach of fiduciary duty owed to noteholders pursuant to the Securitization Contracts. *Id.,* ¶¶ 114-119.

### III.    The Bankruptcy Proceeding

Tricolor and certain of its affiliates petitioned for Chapter 7 liquidation on September 10, 2025. Compl.*,* ¶ 64. The appointed Chapter 7 Trustee in the Bankruptcy Cases has been actively investigating the alleged fraud perpetrated by the Tricolor Debtors, while seeking to monetize Tricolor Debtor and non-debtor

assets and pursuing claims against others to recover assets to distribute to creditors through the bankruptcy process. *See, e.g.*, ECF No. 1-3.

## LEGAL STANDARD

Section 1334(b) provides that the district courts shall have original but not exclusive jurisdiction of proceedings "arising under" title 11, "arising in" title 11, or "related to" cases under title 11. 28 U.S.C. § 1334(b). "Proceedings 'arising under' the Bankruptcy Code are those that clearly invoke substantive rights created by federal bankruptcy law. Proceedings 'arising in' a bankruptcy case are those claims that are not based on any right expressly created by the Bankruptcy Code, but nevertheless, would have no existence outside of the bankruptcy." *In re Robert Plan Corp.*, 777 F.3d 594, 596–97 (2d Cir. 2015) (cleaned up). "A proceeding is 'related to' a case under Title 11 if the outcome of the litigation might have any conceivable effect on the bankruptcy estate, or has any significant connection with the bankrupt estate." *Credit Suisse AG v. Appaloosa Inv. Ltd. P'ship I*, No. 15-CV-3474 (SAS), 2015 WL 5257003, at *6 (S.D.N.Y. Sept. 9, 2015) (cleaned up).

Civil claims filed in state court can be removed "to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." 28 U.S.C. § 1452(a). "The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground." *Id.* § 1452(b). On a motion to remand, the removing party bears the burden of demonstrating the propriety of

removal. *See Fouad v. Milton Hershey Sch. & Sch. Trust*, 523 F. Supp. 3d 648, 652 (S.D.N.Y. 2021).

A federal court can also abstain from adjudicating a matter falling within the federal court's bankruptcy jurisdiction. Depending upon the nature of the federal court's exercise of jurisdiction, abstention may be permissive or mandatory. Federal courts may elect to abstain from adjudicating a core bankruptcy proceeding, that is, a proceeding which arises under or arising in title 11, where doing so would be consistent with the interests of justice, comity with State courts, or respect for State law. 28 U.S.C. § 1334(c)(1). But upon a "timely motion" brought in an action that asserts only State law causes of action, a court is required to abstain if "related to" jurisdiction is the only possible source of federal jurisdiction, an action is brought in State court on such claims, and a State court could timely hear the claims. 28 U.S.C. § 1334(c)(2) (emphasis added).

## DISCUSSION

Plaintiffs argue that abstention is mandatory under Section 1334(c)(2), and thus the Court should remand this matter to the Commercial Division. ECF No. 41 ("Mem.") at 5-10. Plaintiffs argue in the alternative that permissive abstention and equitable remand are warranted on this record. *Id.* at 10-18. Defendants, in contrast, urge the Court to consider their motion to transfer this matter to the Bankruptcy Court without first reaching the mandatory abstention question. ECF No. 43 ("Opp'n") at 8.

"When presented with competing motions to remand a case and to transfer venue, a court is to consider the remand motion first, and then address the motion to transfer venue only if it first denies the motion to remand." *Stahl v. Stahl*, No. 03-CV-0405 (VM), 2003 WL 22595288, at *2 (S.D.N.Y. Nov. 7, 2003).  The Court concludes that abstention is mandatory under Section 1334(c)(2).  "Because abstention and remand are warranted, the motion to transfer venue is denied as moot." *Worldview Ent. Holdings Inc. v. Woodrow*, 611 B.R. 10, 20 (S.D.N.Y. 2019); *see also Goldman v. Grand Living II, LLC*, No. 21-CV-1028 (AMD) (RML), 2021 WL 4033277, at *6, n.5 (E.D.N.Y. Sept. 3, 2021) ("Since abstention is mandatory, any motion to transfer would necessarily fail because the action could not "have initially been brought in the transferee court.").

## A.  Mandatory Abstention

A party seeking mandatory abstention under Section 1334(c)(2) must establish that it has met the six statutory requirements:

> (1) the motion to abstain was timely; (2) the action is based on a state law claim; (3) the action is "related to" but not "arising in" a bankruptcy case or "arising under" the Bankruptcy Code; (4) Section 1334 provides the sole basis for federal jurisdiction; (5) an action is commenced in state court; [and] (6) that action can be "timely adjudicated" in state court.

*Lead I JV, LP v. N. Fork Bank*, 401 B.R. 571, 585 (E.D.N.Y. 2009).

There is no dispute that a timely motion has been brought, that the complaint raises only State law causes of action, that "related to" jurisdiction is the sole basis for the exercise of federal jurisdiction, and that this action was

commenced in state court, *see Mt. McKinley Ins. Co. v. Corning Inc.*, 399 F.3d 436, 447 (2d Cir. 2005) (holding that Section 1334(c)(2) applies to an action commenced in and removed from state court). Accordingly, the only disputed factor is timeliness. *See* Opp'n at 22.

Timeliness is a "mixed question of law and fact" going to (1) the pace at which a state court can adjudicate a claim and (2) the legal sufficiency of that pace. *Parmalat Capital Finance Ltd. v. Bank of America Corp.,* 639 F.3d 572, 580 (2d Cir. 2011).

> Four factors come into play in evaluating § 1334(c)(2) timeliness: (1) the backlog of the state court's calendar relative to the federal court's calendar; (2) the complexity of the issues presented and the respective expertise of each forum; (3) the status of the title 11 bankruptcy proceeding to which the state law claims are related; and (4) whether the state court proceeding would prolong the administration or liquidation of the estate.

*Id.* at 580.

As a threshold matter, the parties disagree as to which court is the relevant comparator to the Commercial Division for purposes of assessing timeliness. Defendants argue that the proper venue for comparison is the Bankruptcy Court, as that court would be the appropriate forum to adjudicate this matter should the Court decline to abstain. *See, e.g., Goldman,* 2021 WL 4033277 at *4 (comparing the proposed remand and transferee courts on cross motions). Plaintiffs insist that the United States District Court for the Southern District of New York is the relevant forum, Mem. at 6, arguing that transfer to the Bankruptcy Court is barred

by a forum selection clause in the Sale and Servicing Agreements, ECF No. 47

("Reply Br.") at 20-22.

The Court need not decide this issue because, even assuming that Defendants

are correct and the Bankruptcy Court is the appropriate comparator, the

requirements for mandatory abstention have been met.  The Commercial Division is

capable of timely adjudicating this matter.

With respect to the first prong, Defendants point to the Commercial

Division's larger backlog of 1758 cases as of December 31, 2025, *see* ECF No. 44-7,

with an average disposition time of 745 days, *see* ECF No. 44-9, compared to the 465

adversary proceedings pending in the Bankruptcy Court as of September 30, 2025,

which has an average disposition time of nine months, *see* ECF No. 44-10.  It is

unclear if these statistics paint the whole picture, however.  As this case concerns a

non-core matter, the Bankruptcy Court could only issue non-binding proposed

findings of fact and conclusions of law with respect to any dispositive motions.  28

U.S.C. § 157(c)(1).  Thus, final resolution would be by the United States District

Court for the Northern District of Texas, considering the matter *de novo*.  The

parties have not presented any data as to the current disposition time of matters

pending in that court.

The second factor, concerning the legal and factual complexity of the case, is

also indeterminate.  This action raises legal claims sounding exclusively in New York

law, including breach of contract and breach of fiduciary duty, of which the

Commercial Division undoubtedly has the greatest expertise. *See, e.g., Worldview*

*Ent. Holdings Inc. v. Woodrow*, 611 B.R. 10, 19 (S.D.N.Y. 2019) ("In a case like this one that will turn on the meaning of the contracts and course of dealing between the parties and on questions of fiduciary duties under New York law, it cannot be said that either this Court or the Bankruptcy Court for the Central District of California are in a better position to hear the action than the New York State Supreme Court."). On the other hand, the Bankruptcy Court has already analyzed some of the contracts at issue in resolving certain motions, and has existing familiarity with the underlying fraud scheme perpetrated by the Tricolor Debtors.  Opp'n at 11-12, 23.  Again, however, the Bankruptcy Court would not be rendering a final decision in this matter. It is doubtful that the United States District Court for the Northern District of Texas has any relevant knowledge of the facts of this case.

Even if the Bankruptcy Court could potentially resolve this issue faster than the Commercial Division, that would not establish that adjudication by the Commercial Division would be untimely.  The relevant question "is not whether the action would be *more quickly* adjudicated in the bankruptcy court than in state court, but rather, whether the action can be *timely adjudicated* in the state court." *Parmalat Cap. Fin. Ltd. v. Bank of Am. Corp.*, 671 F.3d 261, 267 (2d Cir. 2012) (cleaned up).  The answer to this question can be "informed by the comparative speeds of adjudication in the federal and state forums," but these factors are not determinative.  *Parmalat*, 639 F.3d at 580.  "A state court . . .  may still be a timely forum, even if it will require more time to adjudicate an action than a federal court, as long as the bankruptcy proceedings will not be hindered by the delay." *In re Miami*

*Metals I, Inc.*, 625 B.R. 593, 601 (Bankr. S.D.N.Y. 2021); *accord Post Invs. LLC v. Gribble*, No. 12-CV-4479 (ALC) (AJP), 2012 WL 4466619, at *5 (S.D.N.Y. Sept. 27, 2012); *see also In re AOG Ent., Inc.*, 569 B.R. 563, 580 (Bankr. S.D.N.Y. 2017) ("If the lawsuit will not prolong the administration of the bankruptcy case, it supports the position that it can be timely adjudicated in state court.").

In this case, any delay in proceedings engendered by a remand to state court would not unduly hinder the administration of the Bankruptcy Cases. "In deciding whether a matter may be timely adjudicated, perhaps the single most important factor is the nature of the underlying chapter proceeding." *In re New 118th LLC*, 396 B.R. 885, 894 (Bankr. S.D.N.Y. 2008). Where a "Chapter 11 reorganization is pending, the court must be sensitive to the needs of the debtor attempting to reorganize." *Id.* In contrast, "[i]n a Chapter 7 proceeding there is no administrative urgency or plan of reorganization to facilitate and timely adjudication can be weighed relatively lightly." *Parmalat Cap.*, 671 F.3d at 268-69.

The Tricolor Debtors are in liquidation through Chapter 7. In such cases, "where the primary concern is the orderly accumulation and distribution of assets, the requirement of timely adjudication is seldom significant." *In re New 118th LLC*, 396 B.R. at 895.

Defendants counter that an adverse judgment may result in indemnification or contribution claim against the Debtors' estate, which would then need to be liquidated and administered as part of the Chapter 7 process. Opp'n at 23-24. Yet bankruptcy estates are routinely administered even in the face of contingent or

unliquidated claims.  *See, e.g.*, 11 U.S.C. § 502(c) (process for estimating contingent or unliquidated claims in order to prevent undue delay to the administration of the estate); *id.* § 502(e)(1)(B) (disallowing claims for contribution that are contingent at time of allowance).  Defendants have not demonstrated how their potential claims would prevent the Chapter 7 Trustee from doing its essential work of gathering available assets, disposing of them, determining the amounts due to various creditors and the priority of such claims, and making distributions in the interim. *See, e.g., In re Miami Metals I, Inc.*, 625 B.R. at 605 (recognizing that delay in completing liquidation of estate is not significant factor when assessing timeliness in mandatory abstention context).

Accordingly, the requirements of Section 1334(c)(2) have been met.  The Court must therefore abstain from exercising jurisdiction over this action and remand to state court.

## B.    Permissive Abstention and Equitable Remand

For similar reasons, the Court finds that permissive abstention under 28 U.S.C. § 1334(c)(1) and equitable remand under 28 U.S.C. § 1452(b) would also be appropriate.  "The two inquiries are essentially the same and are often analyzed together." *Little Rest Twelve, Inc. v. Visan*, 458 B.R. 44, 60 (S.D.N.Y. 2011).  Relevant factors include:

> (1) the effect on the efficient administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty or unsettled nature of the applicable state law; (4) comity; (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (6) the existence of the right to a jury

trial; and (7) prejudice to the involuntarily removed defendants.

*Id.*

These factors weigh strongly in favor of abstention and remand. This action will have minimal effect on the administration of the bankruptcy estate. State law issues clearly predominate, as the only causes of action asserted in the complaint are for breach of contract and breach of fiduciary duty under New York law. "The interests of comity are promoted by allowing the claims to remain where the plaintiffs elected to bring them, *i .e.* state court." *Buechner v. Avery*, No. 05-CV-2074 (PKC), 2005 WL 3789110, at *6 (S.D.N.Y. July 8, 2005). Additionally, "the state action does not turn on any issue that is now being litigated in Bankruptcy Court." *Id.* While "the potential indemnification claim against the bankrupt estate is a factor that weighs somewhat against abstention, alone it is not a sufficient ground for avoiding an equitable remand." *Id.* (cleaned up). Plaintiffs' right to a jury trial would be protected in the Commercial Division. The Bankruptcy Court, however, is unable to preside over a jury trial absent the consent of all parties. *Id.*

Accordingly, even if mandatory abstention did not apply, the Court finds the requirements for permissive abstention and equitable remand have been met.

## CONCLUSION

For the reasons set forth above, Plaintiff's motion to remand this matter to state court is **GRANTED** and Defendant's cross-motion to transfer is **DENIED.** The Clerk of Court is directed to remand this matter to the Supreme Court of the State of New York, County of New York, Commercial Division. The Clerk of Court

is further directed to terminate all pending motions and mark this case as closed on

the Court's docket.


SO ORDERED.

Dated:  June 5, 2026
           New York, New York                    _____
                                                  JEANNETTE A. VARGAS
                                                  United States District Judge